UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TATIANA OSTROWIECKI,** *et al.* | CIVIL ACTION |
| VERSUS | No. 07-6598 |
| **AGGRESSOR FLEET, LTD.,** *et al.* | SECTION: I/5 |
| c/w | |
| **SONDRA RUBIN,** *et al.* | CIVIL ACTION |
| VERSUS | No. 07-6931 |
| **AGGRESSOR FLEET, LTD.,** *et al.* | |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed on behalf of defendant, the Shipowners' Mutual Protection and Indemnity Association (Luxembourg) ("Shipowners"), to dismiss all claims brought against it in these consolidated cases.[1] For the following reasons, Shipowners' motion is **GRANTED**.

### *BACKGROUND*

Israel Ostrowiecki ("Ostrowiecki"), Bruce Rubin ("Rubin"), and Rubin's daughter, Lilith

---

[1] R. Doc. No. 49.

Rubin ("L. Rubin"),[2] were three of nineteen passengers on a ten-day cruise and recreational scuba diving expedition aboard the D/V OKEANOS AGGRESSOR ("OKEANOS").[3] The OKEANOS is owned and operated by Aventuras Maritimas Okeanos, S.A., ("AMO") which is a Costa Rican corporation.[4] At the time of this cruise, AMO was a franchisee of Aggressor Fleet Franchising, Inc. ("AFFI"), the franchisor for the Aggressor Fleet; AFFI is a Louisiana corporation.[5] AFFI assists in marketing cruises onboard the OKEANOS for diving off the coast of Costa Rica; AFFI also promulgates and enforces standards for the operation of OKEANOS cruises off the Costa Rican coast.[6] Aggressor Fleet, Ltd., ("AFL") also a Louisiana corporation, is the booking agent for scuba diving trips aboard vessels operating as Aggressor Fleet franchisees, including the OKEANOS.[7]

Ostrowiecki, Rubin, and L. Rubin boarded the OKEANOS on May 12, 2003, at Puntarenas, Costa Rica, the place at which the diving trip originated.[8] The divers would prepare for the daily dives aboard the OKEANOS before traveling aboard a smaller vessel to the specific

---

[2] Ostrowiecki was a resident of Brazil, Rubin was a resident of New Mexico, and L. Rubin is allegedly a resident of both New Mexico and Louisiana. R. Doc. No. 49-17, Shipowners statement of uncontested material facts ¶¶ 4, 6-7 [hereinafter, "Shipowners SOF"]; R. Doc. No. 49-4, Shipowners mot., ex. B, Ostrowiecki pet. ¶ 1; R. Doc. No. 49-3, Shipowners mot., ex. A, Rubin pet. ¶ 2; R. Doc. No. 49-5, Shipowners mot., ex. C, L. Rubin dep. at 9-12.

[3] Ostrowiecki pet. ¶¶ 12, 15; Rubin second am. pet. ¶¶ 2, 13; Shipowners SOF ¶¶ 1, 2.

[4] R. Doc. No. 49-6, Shipowners mot., ex. D, Randall Martinez Chinchilla aff. ¶¶ 3, 9.

[5] *Id.* ¶ 11; Ostrowiecki pet. ¶ 5; R. Doc. No. 86-2, pls. mot., statement of material facts ¶ 4 [hereinafter "pls. SOF"].

[6] Chinchilla aff. ¶ 11.

[7] Ostrowiecki pet. ¶ 4; pls. SOF ¶ 5.

[8] Ostrowiecki pet. ¶¶ 13, 14; Rubin second am. pet. ¶¶ 14, 17.

dive site.[9]

On May 16, 2003, Ostrowiecki, Rubin, and L. Rubin prepared for the second dive of the day and traveled from the OKEANOS to a dive site near the Cocos Islands, off the coast of Costa Rica.[10] Ostrowiecki, Rubin, and L. Rubin were three of nine divers on this particular dive.[11] The dive was supervised by an AMO-employed dive master employed aboard the OKEANOS, Randal E. Wright ("Wright").[12]

Once the dive began, several of the divers allegedly aborted the dive early because of turbulent diving conditions.[13] Fifty minutes from the time the dive began, seven of the nine divers, including L. Rubin, returned to the vessel.[14] The vessel searched for forty-five minutes for the remaining divers, Ostrowiecki and Rubin, but to no avail.[15] Ostrowiecki and Rubin disappeared at sea during this dive.[16]

On November 5, 2003, the Ostrowiecki plaintiffs filed their petition in Orleans Parish Civil District Court against AFL, AFFI, Aggressors International, Ltd. ("AIL"),[17] AMO, Wayne

---

[9] Ostrowiecki pet. ¶ 14; Rubin second am. pet. ¶ 17.

[10] Ostrowiecki pet. ¶¶ 11, 15; Rubin second am. pet. ¶¶ 12, 19.

[11] Ostrowiecki pet. ¶ 15; Rubin second am. pet. ¶ 19.

[12] R. Doc. No. 1-9, notice of removal, Ostrowiecki second am. pet.

[13] Ostrowiecki pet. ¶¶ 18-19; Rubin second am. pet. ¶ 22.

[14] Ostrowiecki pet. ¶ 20; Rubin second am. pet. ¶ 23.

[15] Ostrowiecki pet. ¶¶ 20-23; Rubin second am. pet. ¶¶ 23-26.

[16] Ostrowiecki pet. ¶¶ 11, 27; Rubin second am. pet. ¶¶ 12, 31; Shipowners SOF ¶ 1.

[17] AIL allegedly assists in marketing for Aggressor Fleet franchisees, including the OKEANOS. Ostrowiecki pet. ¶ 6. AIL was dismissed as a defendant from the lawsuit when the Louisiana Court of Appeals for the Fourth Circuit granted AIL's writ application with respect to personal jurisdiction. R. Doc. No. 24-2, mem. supp. of joint mot. to remand at 7 n.4.

Hasson ("Hasson"),[18] Randall Martinez Chinchilla ("Chinchilla"),[19] and XYZ Insurer.[20]  Two days later, the Rubin plaintiffs also filed their petition in Orleans Parish Civil District Court against the same seven defendants.[21]  On May 6, 2004, the Ostrowiecki plaintiffs amended their petition to add Wright as a defendant.[22]

The Ostrowiecki and Rubin plaintiffs sought damages for wrongful death and survival damages resulting from defendants' negligence, breach of contract, and misrepresentations.[23]  The Rubin plaintiffs also alleged intentional and negligent infliction of emotional distress.[24]

On December 4, 2003, defendants removed the cases to this Court, claiming that the Death on the High Seas Act ("DOHSA") provided "the exclusive remedy for any person claiming damages as the result of death occurring on the high seas."[25]  The Ostrowiecki and Rubin plaintiffs filed a joint motion to remand which the Court granted.

On June 17, 2004, the two lawsuits were consolidated by the Orleans Parish Civil District

---

[18] Hasson is allegedly an owner of AIL and the Aggressor Fleet franchise Operations Manager Captain. Ostrowiecki pet. ¶ 8.

[19] Chinchilla is allegedly the President of AMO.  *Id.* ¶ 9.

[20] *Id.*

[21] *Rubin v. Aggressor Fleet, Ltd.*, Civil Action No. 07-6931, R. Doc. No. 1-6, notice of removal, ex. C, Rubin pet. (E.D. La. Oct. 9, 2007).

[22] Ostrowiecki second am. pet.

[23] Ostrowiecki pet. ¶¶ 34-51; Rubin second am. pet. ¶¶ 39-61.

[24] Rubin second am. pet. ¶¶ 54-57.

[25] *Rubin v. Aggressor Fleet Ltd.*, Civil Action No. 03-3408, R. Doc. No. 1, notice of removal ¶ 5 (E.D. La. Dec. 4, 2003); *Ostrowiecki v. Aggressor Fleet Ltd.*, Civil Action No. 03-3409, R. Doc. No. 1, notice of removal ¶ 5 (E.D. La. Dec. 4, 2003).

Court.[26]  On April 7, 2006, plaintiffs amended their joint petition to add three insurers, Certain Underwriters at Lloyds, London, ("Lloyds") Travelers Property Casualty Corporation ("Travelers"), and Shipowners.[27]  Lloyds provided underwater liability insurance to defendants Wright, AFL, AFFI, Hasson, and AMO.[28]  Travelers provided general commercial liability insurance to defendants AFL and Hasson.[29]  Shipowners is a mutual marine protection and indemnity (P&I) association organized under the laws of Luxembourg with its managing agent in London, England.[30]

The plaintiffs amended their joint petition again on July 23, 2007, adding an alternative claim pursuant to DOHSA, 46 U.S.C. §§ 30301-30308 (2006).[31]  On October 9, 2007, Shipowners removed[32] and, on December 12, 2007, this Court denied the plaintiffs' motion to remand.[33]

Shipowners filed this motion for summary judgment seeking dismissal of plaintiffs' claims against it.  Shipowners argues that Louisiana's direct action statute is inapplicable to it because Louisiana law has an insufficient interest in the dispute to warrant the application of

---

[26] *Ostrowiecki v. Aggressor Fleet, Ltd.*, Civil Action No. 2003-16697 (Orleans Parish Civ. Dist. Ct. June 17, 2004).

[27] R. Doc. No. 24-4, joint mot. remand, ex. C, joint fourth am. pet.

[28] *Id.*

[29] *Id.*

[30] R. Doc. No. 49-7, Shipowners mot., ex. E, Simon Swallow aff. ¶ 6.

[31] Notice of removal, ex. C, joint fifth am. pet.

[32] The parties filed a notice of removal in each case.  *See Ostrowiecki v. Aggressor Fleet, Ltd.*, Civil Action No. 07-6598, R. Doc. No. 1; *Rubin v. Aggressor Fleet, Ltd.*, Civil Action No. 07-6931, R. Doc. No. 1.

[33] R. Doc. No. 44.

Louisiana law, including Louisiana's direct action statute.[34]  Shipowners also argues that the requirements for application of the direct action statute in this case have not been met because the accident did not occur in Louisiana and the Shipowners' policy was not written or delivered in Louisiana.[35]

Plaintiffs argue that this Court should decline Shipowners' request to upset the Louisiana district and appellate court rulings that the direct action statute does apply in this case.[36] Plaintiffs also argue that the policy was written and delivered in Louisiana and that, even if it was not, the policy was constructively delivered in Louisiana.[37]

## *LAW AND ANALYSIS*

**I.     Standard of Law**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986).  The party seeking summary judgment need not produce evidence negating the existence

---

[34] R. Doc. No. 49-2, Shipowners mem. supp. at 7-11.

[35] *Id.* at 11-19.

[36] R. Doc. No. 86, pls. mem. opp'n at 11 n.34.

[37] *Id.* at 17-24.

of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

**II.     Discussion**

*A.     Law-of-the-Case Doctrine*

On August 9, 2006, Shipowners asserted, in Orleans Parish Civil District Court, exceptions of lack of personal jurisdiction, improper venue, forum non conveniens, and no right

or cause of action pursuant to the Louisiana direct action statute.[38] The district court denied each of Shipowners' exceptions.[39] The Louisiana Court of Appeals for the Fourth Circuit denied Shipowners' application for supervisory writs, stating: "We find that the trial court did not err in denying [Shipowners'] exceptions of lack of personal jurisdiction and no right/no cause of action. Accordingly, [Shipowners'] application for supervisory writ is denied."[40] Plaintiffs argue that this Court should decline Shipowners' request to upset the Louisiana district and appellate court rulings.[41]

Under Louisiana law, an appellate court's denial of a supervisory writ is not a "decision on appeal," but "'is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction.'" *Louisiana v. Guidry*, 489 F.3d 692, 697 (5th Cir. 2007) (*quoting Goodwin v. Goodwin*, 607 So. 2d 8, 10 (La. Ct. App. 1992)). In addition, "a trial court's denial of a peremptory exception is an interlocutory judgment, subject to reconsideration by that court." *Id.*; *VaSalle v. Wal-Mart Stores, Inc.*, 801 So. 2d 331, 334-35 (La. 2001).

Upon removal of a case, "interlocutory state court orders are transformed by operation of

---

[38] R. Doc. No. 86-9, pls. opp'n, ex. I, Mar. 14, 2007, reasons for judgment at 3-5.

[39] *Id.* at 4-5. Specifically, the court stated:
> As this Court has determined that some of the Plaintiffs' state law claims survive, the Direct Action Statute will apply.
> Additionally, Plaintiffs have alleged that the policy at issue was issued and delivered in Louisiana (it was dated in Metairie, Louisiana), thus satisfying the requirements of La. R.S. 22:655. Alternatively, the burden of proof is on the exceptor to show that the policy at issue does not meet the requirements of La. R.S. 22:655, and the Court finds that Shipowners has not met this burden. Therefore, Shipowners' exceptions of no cause and/or right of action are DENIED.

*Id.* at 5.

[40] Pls. opp'n, ex. J, July 27, 2007, writ denial.

[41] Pls. mem. opp'n at 11 n.34.

28 U.S.C. § 1450[42] into orders of the federal district court to which the action is removed. The district court is thereupon free to treat the order as it would any such interlocutory order it might itself have entered." *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988). A district court is not precluded from reconsidering previous rulings on interlocutory orders, even in the absence of new evidence or an intervening change in the substantive law. *United States v. Palmer*, 122 F.3d 215, 220 (5th Cir. 1997); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, 37 F.3d 1069 (5th Cir. 1994). Therefore, the Court is free to consider Shipowners' motion for summary judgment, despite the fact that "the motion encompass[es] many of the arguments rejected by the state trial court." *See Guidry*, 489 F.3d at 698.

### B. Louisiana's Direct Action Statute

Louisiana law allows a plaintiff to bring a direct action lawsuit against a tortfeasor's insurer. La. Rev. Stat. Ann. § 22:655(B)(1) (2004) ("The injured person or his or her survivors or heirs . . . , at their option, shall have a right of direct action against the insurer within the terms and limits of the policy . . . ."). "Under Louisiana law, a right of direct action may be brought against an insurer in only three limited instances: (1) if the accident *occurred* in Louisiana; (2) if the policy was *written* in Louisiana; or (3) if the policy was *delivered* in Louisiana." *Landry v.*

---

[42] Section 1450 provides in pertinent part:
  Whenever any action is removed from a State court to a district court of the United States, . . . [a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court.
28 U.S.C. § 1450 (2006).

*Travelers Indem. Co.*, 890 F.2d 770, 772 (5th Cir. 1989). The accident occurred off the coast of Costa Rica, not in Louisiana. However, the parties dispute whether the policy of insurance was written or delivered in Louisiana.

Delivery requires that: (1) the insurance company or its agent intentionally parts with control of the policy, (2) the company or its agent places the policy in the control of the insured or the insured's agent, and (3) the underlying purpose of delivery is to make a valid and binding contract of insurance. *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 120 F.3d 583, 586 (5th Cir. 1997); *Pruitt v. Great S. Life Ins. Co.*, 12 So. 2d 261, 262 (La. 1943). Delivery of the policy to the insured's agent is considered delivery to the insured. *Auster Oil & Gas, Inc. v. Stream*, 891 F.2d 570, 574 (5th Cir. 1990). The determination regarding whether an insurance policy has been delivered depends upon the intentions of the parties as manifested by their acts or words. *McDermott*, 120 F.3d at 586; *Pruitt*, 12 So. 2d at 262.

Delivery may be actual or constructive. *Auster Oil & Gas, Inc. v. Stream*, 891 F.2d 570, 574 (5th Cir. 1990); *Pruitt*, 12 So. 2d at 262. "[I]t is also well-settled that delivery orchestrated to avoid the application of Louisiana law will not be sanctioned." *McDermott*, 120 F.3d at 587 (*citing Grubbs v. Gulf Int'l Marine, Inc.*, 13 F.3d 168, 171-72 (5th Cir. 1994)). Therefore, constructive delivery may be found if the insurer engages in an orchestrated fiction to avoid application of Louisiana's direct action statute. *See Schexnider v. McDermott Int'l Inc.*, 688 F. Supp. 234, 238 (W.D. La. 1988) (noting that the out of state delivery was made to a subsidy of a Louisiana parent company and "the sole purpose" of delivering the policy in Houston, Texas, "was to defeat the rights of direct action plaintiffs").

Shipowners provided P&I coverage to its member, Ocean Dive Charters ("Ocean

Dive"),[43] with respect to Ocean Dive's interest in several vessels, including the OKEANOS.[44] Ocean Dive's P&I coverage was evidenced through Certificate of Entry Number 25 ("Certificate No. 25"), which was prepared and executed in London, England.[45] Certificate No. 25 evidenced the binding P&I insurance coverage from Shipowners to Ocean Dive.[46]

As is customary in the London insurance market, Shipowners does not deal directly with the insured, Ocean Dive.[47] Instead, the P&I coverage was negotiated between Shipowners and Ocean Dive's London broker, Newman Martin and Buchan Ltd. ("NMB").[48] NMB is an independent London insurance broker that represents parties seeking insurance in the London insurance market.[49] NMB is not an agent or broker of Shipowners.[50] NMB submitted Ocean Dive's requests for P&I coverage to Shipowners and negotiated the insurance terms, conditions,

---

[43] Ocean Dive is not licensed to do and is not doing business in the State of Louisiana. R. Doc. No. 49-10, Shipowners mot., ex. F, certificate of no record.

[44] Swallow aff. ¶ 10; R. Doc. No. 49-7, Shipowners mot., ex. E-1, Certificate of Entry No. 25.

[45] Swallow aff. ¶ 11; Certificate No. 25.

[46] Swallow aff. ¶ 20. Certificate No. 25 provides in pertinent part:
>The Terms and Conditions of the Insurance in respect of the said vessel or vessels named in the First Schedule are those contained in the Rules of the Association except to the extent that those Rules are modified by the Special Terms set out below.

Although Certificate No. 25 is unsigned, the parties do not argue that it misrepresents the terms of the policy, is inaccurate, or not genuine. Further, Shipowners' Chief Operating officer swore to the correctness of Certificate No. 25 and the unsigned copy was notarized and attached to his deposition. Swallow aff. ¶¶ 2, 9, 20. The Court does not find the fact that Certificate No. 25 is unsigned to affect its determination.

[47] Swallow aff. ¶ 12.

[48] *Id.* ¶ 12-13.

[49] *Id.* ¶ 24.

[50] *Id.*

-11-

and premiums.[51]

On January 16, 2003, Ocean Dive agreed to renew its P&I policy with Shipowners through NMB; on February 27, 2003, Shipowners prepared Certificate No. 25 and delivered it to NMB in London.[52] Shipowners never communicated directly with Ocean Dive or its American broker, Gulf Coast Marine ("Gulf Coast").[53] Gulf Coast is not an agent or broker of Shipowners.[54]

On October 29, 2003, Gulf Coast prepared and issued a policy that included a photocopy of Certificate No. 25; the policy was "Dated at Metairie, LA."[55] The Gulf Coast policy defines the insured as Ocean Dive "and as within," and the schedule of named insureds includes Ocean Dive and AMO (Aventuras Maritimas Okeanos, S.A.), the owner and operator of the OKEANOS.[56] The OKEANOS is listed among the schedule of vessels under the policy.[57] AFL (Aggressor Fleet, Ltd.), a Louisiana corporation and the boooking agent for diving trips aboard the Aggressor Fleet franchisees, negotiated the Gulf Coast policy as AMO's agent and paid the premiums on AMO's behalf.[58] Certificate No. 25 was included within the Gulf Coast policy

---

[51] *Id.* ¶ 13.

[52] *Id.* ¶¶ 18, 19, 20, 22; Certificate No. 25; R. Doc. No. 49-7, Shipowners mot., ex. E-3, renewal quote; R. Doc. No. 49-7, Shipowners mot., ex. E-4, e-mail correspondence between Shipowners and NMB.

[53] *Id.* ¶ 16.

[54] *Id.* ¶ 30.

[55] Swallow aff. ¶ 25; R. Doc. Nos. 49-7, 49-8, 49-9, Shipowners mot., ex. E-5, Gulf Coast policy.

[56] Gulf Coast policy at 4.

[57] *Id.* at 3.

[58] R. Doc. No. 86-8, Plaintiffs opp'n, ex. H, Jorge Berrocal dep. at 65-67.

under section XP.[59]

Plaintiffs argue that because the Gulf Coast policy was written and delivered in Louisiana and that the Gulf Coast policy included Certificate No. 25, Shipowners policy was written and delivered in Louisiana.[60] However, Gulf Coast was AMO's agent, not an agent of Shipowners that had the power to issue an insurance policy on Shipowners' behalf.[61] Gulf Coast was not authorized by Shipowners to issue insurance and/or alter any term of coverage on Shipowners' behalf.[62]

In *McDermott*, the United States Court of Appeals for the Fifth Circuit found that Louisiana's direct action statute did not apply because the policy was delivered or issued for delivery in London. 120 F.3d at 587. In *McDermott*, the insured purchased an all-risks policy from an insurer in London through a London insurance broker who negotiated the policy terms on behalf of the insured. *Id.* at 584. The policy was delivered to the insured's agent-broker in London; photocopies of the policy were delivered to the insured's Canadian broker and to McDermott headquarters in New Orleans, Louisiana. *Id.* at 587. Further, the parties did not comply with Louisiana standards for issuing insurance, the insurer was not licensed to do business in Louisiana, the policy was marked "Dated in LONDON," the insured's agent-broker

---

[59] Gulf Coast policy at 38-41.

[60] Pls. mem. opp'n at 17-22.

[61] Plaintiffs argue that, although Shipowners issued Certificate No. 25 to Ocean Dive, Ocean Dive was a nonexistent company. *Id.* at 20. Plaintiffs contend that Shipowners was, therefore, actually insuring AMO (Aventuras Maritimas Okeanos, S.A.), the vessel owner and operator. *Id.* However, Certificate No. 25 makes no mention of AMO (Aventuras Maritimas Aventuras, S.A.). Shipowners' member is listed as Ocean Dive. Further, the evidence presented by plaintiffs that Ocean Dive is a "nonexistent" company reveals that the company may be a "d/b/a of Oceans International, Limited." R. Doc. No. 86-6, pls. opp'n, ex. D, Wayne Ray Hasson, Jr., dep. at 348. This does not mean that the company does not exist, at least in name.

[62] Swallow aff. ¶ 31.

was listed on the policy, and the original policy remained in London. *Id.*

The *McDermott* court held that, under those facts, the policy was issued in London. *Id.* at 587; *see also, e.g.*, *Cont'l Ins. Co. v. Jantran, Inc.*, 906 F. Supp. 362, 365 (E.D. La. 1995) (Berrigan, J.) (holding that the direct action statute did not apply because the insurer did not authorize the Louisiana broker to issue its policies, the Louisiana broker was the insured's agent, and the insurer's policy was delivered to a London broker); *Debaillon v. Power Offshore Servs., Inc.*, No. Civ.A. 6:99-1606, 2004 WL 3661071, at *3-4 (E.D. La. Nov. 29, 2004) (holding that Louisiana's direct action statute was inapplicable because the certificate of entry was written and delivered in London to the insured's London broker, despite delivery of a cover note evidencing the insurance in Louisiana); *Aggregate Barges, Inc. v. Gulf Marine Towing, Inc.*, Civ. A. 91-2602, 1995 WL 96624, at *1 (E.D. La. Mar. 7, 1995) (Berrigan, J.) (holding that the direct action statute was inapplicable when policy was delivered in London, despite delivery of a confirmation of insurance by the broker to the insureds).

Just as in *McDermott*, Shipowners negotiated the policy terms with Ocean Dive's London broker, NMB. Shipowners delivered correspondence and documents concerning Ocean Dive's P&I coverage to NMB and not directly to Ocean Dive or any other entity.[63] Shipowners never communicated directly with Ocean Dive or Gulf Coast.[64] It is evident from the facts of this case that the policy was written and delivered to the insured's agent (NMB) by Shipowners in London, not Louisiana. The three *McDermott* requirements for delivery occurred by Shipowners in London because: (1) Shipowners intentionally parted with control of the policy by giving the

---

[63] *Id.* ¶ 13.

[64] *Id.* ¶ 16.

policy to NMB, (2) Shipowners gave control of the policy to the insured's agent, NMB, and (3) the underlying purpose of the delivery was to effect a binding contract of insurance.[65]

Plaintiffs also argue that the policy was constructively delivered in Louisiana because Shipowners engaged in conduct to defeat the rights of direct action plaintiffs.[66] However, "the long-established procedure of delivering policies only to brokers in London," does not alone give rise to the possibility of constructive delivery. *Aggregate Barges*, 1995 WL 96624, at *1 (*citing Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164, 1175 (5th Cir. Unit A Sept. 1981)); *see Deballion*, 2004 WL 3661071, at *3. Therefore, the policy was not constructively delivered in Louisiana.[67] Because the policy was not written or delivered in Louisiana and the accident did not occur in Louisiana, the direct action statute is not triggered in this case.[68]

Accordingly,

---

[65] *Id.* ¶¶ 20, 22-23. Also instructive is Judge Berrigan's decision in *Continental Insurance Co. v. Jantran, Inc.*, 906 F. Supp. at 364-65. The court held that the Louisiana direct action statute was inapplicable because:
> (1) under the terms of the [insurer's] policy and even the terms of [the broker's] own certificate, the policy had to be issued by [the insurer], not the plaintiff's broker; (2) [the insurer] did not authorize [the broker] to issue [the insurer's] policies; (3) the insured's broker's certificate of insurance is not a policy; (4) [the broker] was acting on behalf of [the insured], not [the insurer].

*Id.* Similarly, here, Shipowners did not authorize Gulf Coast to issue its policies and Gulf Coast was acting on behalf of the insured, not on behalf of Shipowners.

[66] Pls. mem. opp'n at 22-24.

[67] Plaintiffs rely heavily on *Temple v. J&L Marine, Inc.*, for the proposition that the direct action statute is applicable or, at the least, a genuine issue of material fact exists as to whether the statute is applicable. *Id.* at 17-19. However, *Temple* is distinguishable from the factual situation in this case. In *Temple*, the only documents written and delivered in London were certificates generated by agents of the London insurers. No. Civ. A. 94-751, 1997 WL 204921, at *6 (E.D. La. Apr. 24, 1997) (Porteous, J.). Furthermore, the insured in *Temple* only had Louisiana offices. *Id.* at *7. The court found a genuine issue of material fact existed as to whether delivery outside of Louisiana was for the purpose of avoiding delivery. Ocean Dive, Shipowners' insured, was not a Louisiana corporation, nor did it have Louisiana offices.

[68] Due to the Court's decision that the Louisiana direct action statute is inapplicable, the Court need not further address Shipowners' argument that Louisiana law, including the direct action statute, does not apply because Louisiana has an insufficient interest in the dispute.

**IT IS ORDERED** that defendant's motion for summary judgment[69] is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims made by plaintiffs in the above-captioned cases against defendant, Shipowners' Mutual Protection and Indemnity Association (Luxembourg), are **DISMISSED WITH PREJUDICE**.

Because Shipowners' is no longer a party to the above-captioned case, **IT IS FURTHER ORDERED** that the motion *in limine* to exclude the testimony of Shipowners' expert, Robert Allan Joiner,[70] is **DISMISSED AS MOOT**.

New Orleans, Louisiana, May 20, 2008.

                                      **LANCE M. AFRICK**
                                    **UNITED STATES DISTRICT JUDGE**

---

[69] R. Doc. No. 49.

[70] R. Doc. No. 189.