UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---:|
| **TATIANA OSTROWIECKI,** *et al.* | **CIVIL ACTION** |
| **VERSUS** | **No. 07-6598** |
| **AGGRESSOR FLEET, LTD.,** *et al.* | **SECTION: I/5** |
| **c/w** | |
| **SONDRA RUBIN,** *et al.* | **CIVIL ACTION** |
| **VERSUS** | **No. 07-6931** |
| **AGGRESSOR FLEET, LTD.,** *et al.* | |

### ORDER AND REASONS

Before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction filed on behalf of defendants, Aventuras Maritimas Okeanos, S.A. ("AMO"), and Randall Martinez Chinchilla ("Chinchilla").[1] In the alternative, the motion seeks dismissal of plaintiffs' claims against Chinchilla pursuant to Rule 12(b)(6) for failure to state a claim.[2] For the following reasons, the motion to dismiss for lack of personal jurisdiction is **GRANTED IN PART AND DENIED IN PART**, and the motion to dismiss the claims against Chinchilla for failure to state a claim is **DISMISSED AS MOOT**.

---

[1] R. Doc. No. 74.

[2] *Id.*

*BACKGROUND*

Israel Ostrowiecki ("Ostrowiecki"), Bruce Rubin ("Rubin"), and Rubin's daughter, Lilith Rubin ("L. Rubin"),[3] were three of nineteen passengers on a ten-day cruise and recreational scuba diving expedition aboard the D/V OKEANOS AGGRESSOR ("OKEANOS").[4] The OKEANOS is owned and operated by AMO, which is a Costa Rican corporation with its principal place of business and headquarters in San Jose, Costa Rica.[5] At the time of this cruise, AMO was a franchisee of Aggressor Fleet Franchising, Inc. ("AFFI"), which is the franchisor for the Aggressor fleet; AFFI is a Louisiana corporation.[6] Chinchilla is the president and a shareholder of AMO and a Costa Rican citizen.[7] Chinchilla was not present on or in operational control of the OKEANOS or conduct aboard the OKEANOS during the above-mentioned cruise.[8]

AFFI assists in marketing cruises onboard the OKEANOS for diving off the coast of Costa Rica; AFFI also promulgates and enforces standards for the operation of OKEANOS

---

[3] Ostrowiecki was a resident of Brazil, Rubin was a resident of New Mexico, and L. Rubin is allegedly a resident of both New Mexico and Louisiana. R. Doc. No. 127-20, pls. opp'n, ex. N, Ostrowiecki pet. ¶ 1; R. Doc. No. 127-20, pls. opp'n, ex. N, Rubin second am. pet. ¶ 2; R. Doc. No. 49-5, Shipowners mot., ex. C, L. Rubin dep. at 9-12.

[4] Ostrowiecki pet. ¶¶ 12, 15; Rubin second am. pet. ¶¶ 2, 13.

[5] R. Doc. No. 74-3, AMO mot. dismiss, ex. A, Chinchilla aff. ¶¶ 3, 9; R. Doc. No. 74-3, AMO mot. dismiss, ex. A, Chinchilla second aff. ¶ 2.

[6] Chinchilla aff. ¶ 11; Ostrowiecki pet. ¶ 5; R. Doc. No. 127, pls. opp'n, ex. I, franchise agreement between AMO and AFFI.

[7] Ostrowiecki pet. ¶ 9; Chinchilla aff. ¶ 2.

[8] Chinchilla second aff. ¶ 12.

cruises off the Costa Rican coast.[9] Aggressor Fleet, Ltd. ("AFL"), also a Louisiana corporation, is the booking agent for scuba diving trips aboard vessels operating as Aggressor fleet franchisees, including the OKEANOS.[10]

Ostrowiecki, Rubin, and L. Rubin boarded the OKEANOS on May 12, 2003, at Puntarenas, Costa Rica, where the diving trip originated.[11] Before traveling aboard a smaller vessel to the specific dive site, the divers would prepare aboard the OKEANOS for the daily dives.[12]

On May 16, 2003, Ostrowiecki, Rubin, and L. Rubin prepared for the second dive of the day and traveled from the OKEANOS to a dive site near the Cocos Islands, off the coast of Costa Rica.[13] Ostrowiecki, Rubin, and L. Rubin were three of nine divers on this particular dive.[14] The dive was supervised by Randall Wright ("Wright"), an AMO-employed dive master working aboard the OKEANOS.[15]

Once the dive began, several of the divers allegedly aborted the dive early because of turbulent diving conditions.[16] Fifty minutes after the dive began, seven of the nine divers,

---

[9] Chinchilla aff. ¶ 11.

[10] Ostrowiecki pet. ¶ 4.

[11] *Id.* ¶¶ 13, 14; Rubin second am. pet. ¶¶ 14, 17.

[12] Ostrowiecki pet. ¶ 14; Rubin second am. pet. ¶ 17.

[13] Ostrowiecki pet. ¶¶ 11, 15; Rubin second am. pet. ¶¶ 12, 19.

[14] Ostrowiecki pet. ¶ 15; Rubin second am. pet. ¶ 19.

[15] R. Doc. No. 1-9, notice of removal, Ostrowiecki second am. pet.

[16] Ostrowiecki pet. ¶¶ 18-19; Rubin second am. pet. ¶ 22.

including L. Rubin, returned to the vessel.[17]  The vessel searched for forty-five minutes for the remaining divers, Ostrowiecki and Rubin, but to no avail.[18]  Ostrowiecki and Rubin disappeared at sea during this dive.[19]

On November 5, 2003, the Ostrowiecki plaintiffs filed their petition in Orleans Parish Civil District Court against AMO and Chinchilla, as well as AFL, AFFI, Aggressors International, Ltd. ("AIL"),[20] Wayne Hasson ("Hasson"),[21] and XYZ Insurer.[22]  Two days later, the Rubin plaintiffs also filed their petition in Orleans Parish Civil District Court against the same seven defendants.[23]

The Ostrowiecki and Rubin plaintiffs sought damages for defendants' negligence, breach of contract, and misrepresentations.[24]  The Rubin plaintiffs also alleged intentional and negligent infliction of emotional distress.[25]

---

[17] Ostrowiecki pet. ¶ 20; Rubin second am. pet. ¶ 23.

[18] Ostrowiecki pet. ¶¶ 20-23; Rubin second am. pet. ¶¶ 23-26.

[19] Ostrowiecki pet. ¶¶ 11, 27; Rubin second am. pet. ¶¶ 12, 31.

[20] AIL allegedly assists in marketing for Aggressor fleet franchisees, including the OKEANOS. Ostrowiecki pet. ¶ 6.  AIL was dismissed as a defendant from the lawsuit when the Louisiana Fourth Circuit Court of Appeals granted AIL's writ application with respect to personal jurisdiction. R. Doc. No. 24-2, mem. supp. of joint mot. to remand at 7 n.4.

[21] Hasson is allegedly an owner of AIL and the Aggressor fleet franchise Operations Manager Captain for all Aggressor fleet vessels, including the OKEANOS.  Ostrowiecki pet. ¶ 8.  Hasson is allegedly a resident of Florida and/or the Cayman Islands.  *Id.*

[22] *Id.*

[23] *Rubin v. Aggressor Fleet, Ltd.*, Civil Action No. 07-6931, R. Doc. No. 1-6, notice of removal, ex. C, Rubin pet. (E.D. La. Oct. 9, 2007).

[24] Ostrowiecki pet. ¶¶ 34-51; Rubin second am. pet. ¶¶ 39-61.

[25] Rubin second am. pet. ¶¶ 54-57.  On December 4, 2003, defendants removed the cases to this Court, claiming that the Death on the High Seas Act ("DOHSA") provided "the exclusive remedy for any person claiming damages as the result of death occurring on the high seas." *Rubin v. Aggressor Fleet Ltd.*, Civil Action No. 03-3408,

AMO and Chinchilla filed this motion to dismiss for lack of personal jurisdiction arguing that neither AMO nor Chinchilla has sufficient minimum contacts to support specific or general jurisdiction.[26] AMO and Chinchilla also argue that they did not consent to jurisdiction in this forum based upon the forum selection clause in Rubin's and Ostrowiecki's Aggressor fleet applications.[27] Chinchilla further argues that jurisdiction with respect to AMO does not confer jurisdiction over him because of the fiduciary shield doctrine.[28] Chinchilla alleges, in the event personal jurisdiction over him is found to exist, that plaintiffs cannot state a cause of action against him because Louisiana law does not provide for such a claim against a corporate director or officer for negligence.[29]

Plaintiffs respond that AMO and Chinchilla consented to jurisdiction in the franchise

---

R. Doc. No. 1, notice of removal ¶ 5 (E.D. La. Dec. 4, 2003); *Ostrowiecki v. Aggressor Fleet Ltd.*, Civil Action No. 03-3409, R. Doc. No. 1, notice of removal ¶ 5 (E.D. La. Dec. 4, 2003). The Ostrowiecki and Rubin plaintiffs filed a joint motion to remand which the Court granted.

On May 6, 2004, the Ostrowiecki plaintiffs amended their petition to add Wright as a defendant. Ostrowiecki second am. pet. On June 17, 2004, the two lawsuits were consolidated by the Orleans Parish Civil District Court. *Ostrowiecki v. Aggressor Fleet, Ltd.*, Civil Action No. 2003-16697 (Orleans Parish Civ. Dist. Ct. June 17, 2004).

On April 7, 2006, plaintiffs amended their joint petition to add three insurers, Certain Underwriters at Lloyds, London ("Lloyds"), Travelers Property Casualty Corporation ("Travelers"), and Shipowners' Mutual Protection and Indemnity Association (Luxembourg) ("Shipowners"). R. Doc. No. 24-4, joint mot. remand, ex. C, joint fourth am. pet. Lloyds provided underwater liability insurance to defendants Wright, AFL, AFFI, Hasson, and AMO. Travelers provided general commercial liability insurance to defendants AFL and Hasson. Shipowners is a mutual marine protection and indemnity association organized under the laws of Luxembourg with its managing agent in London, England. R. Doc. No. 49-7, Shipowners mot., ex. E, Simon Swallow aff. ¶ 6. On May 20, 2008, this Court granted Shipowners' motion for summary judgment and dismissed all of plaintiffs' claims against it. R. Doc. No. 232.

The plaintiffs amended their joint petition again on July 23, 2007, adding an alternative claim pursuant to DOHSA, 46 U.S.C. §§ 30301-30308 (2006). Notice of removal, ex. C, joint fifth am. pet. On October 9, 2007, Shipowners removed. *See* R. Doc. No. 1; *Rubin v. Aggressor Fleet, Ltd.*, Civil Action No. 07-6931, R. Doc. No. 1. On December 12, 2007, this Court denied the plaintiffs' motion to remand. R. Doc. No. 44.

[26] R. Doc. No. 74-2, AMO mem. supp. at 7-17.

[27] *Id.* at 17.

[28] *Id.* at 20-21.

[29] *Id.* at 22.

agreement with AFFI and in Rubin's and Ostrowiecki's Aggressor fleet applications.[30]

Furthermore, plaintiffs allege that AMO and Chinchilla have sufficient minimum contacts with Louisiana and subjecting them to jurisdiction does not offend traditional notions of fair play and substantial justice.[31] Plaintiffs argue that the fiduciary shield doctrine does not apply to Chinchilla because his own conduct subjects him to jurisdiction in Louisiana[32] Finally, plaintiffs argue that they have stated a claim upon which relief may be granted because Chinchilla owed a personal duty to plaintiffs and he breached that duty thereby causing plaintiffs' injury.[33]

---

[30] R. Doc. No. 127, pls. mem. opp'n at 3-6.

[31] *Id.* at 6-19.

[32] *Id.* at 17-18.

[33] *Id.* at 19-22. The Orleans Parish Civil District Court ruled on AMO's and Chinchilla's exceptions of lack of personal jurisdiction on May 27, 2005. R. Doc. No. 127-2, pls. opp'n, ex. A, judgment and reasons for judgment. The state district court denied AMO's and Chinchilla's exceptions, adopting the reasoning of *Spomer v. Aggressor International, Inc.*, 807 So. 2d 267 (La. Ct. App. 2001). *Id.* The Louisiana Fourth Circuit Court of Appeals declined to exercise its supervisory jurisdiction; the writ to the Louisiana Supreme Court was also denied. R. Doc. No. 127-3, pls. opp'n,, ex. B, writ denials. This Court is free to consider the merits of AMO's and Chinchilla's motion, despite the fact that "the motion encompass[es] many of the arguments rejected by the state trial court." *See Louisiana v. Guidry*, 489 F.3d 692, 698 (5th Cir. 2007).
    Under Louisiana law, a court's denial of a supervisory writ is not a "decision on appeal," but "'is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction.'" *Id.* (*quoting Goodwin v. Goodwin*, 607 So. 2d 8, 10 (La. Ct. App. 1992)). "[A] trial court's denial of a peremptory exception is an interlocutory judgment, subject to reconsideration by that court." *Id.*; *VaSalle v. Wal-Mart Stores, Inc.*, 801 So. 2d 331, 334-35 (La. 2001).
    Upon removal of a case, "interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court to which the action is removed. The district court is thereupon free to treat the order as it would any such interlocutory order it might itself have entered." *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988). A district court is not precluded from reconsidering previous rulings on interlocutory orders, even in the absence of new evidence or an intervening change in the substantive law. *United States v. Palmer*, 122 F.3d 215, 220 (5th Cir. 1997); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, 37 F.3d 1069 (5th Cir. 1994).

*LAW AND ANALYSIS*

A.     *Law To Be Applied*

"'When a federal question case is based upon a federal statute that is silent as to service of process, and a state long-arm statute is therefore utilized to serve an out-of-state defendant, Rule 4(e) requires that the state's standard of amenability to jurisdiction apply.'" *Point Landing, Inc. v. Omni Capital Int'l, Ltd.*, 795 F.2d 415, 419 (5th Cir. 1986) (*quoting DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1266 (5th Cir. 1983)); *Burstein v. State Bar of Cal.*, 693 F.2d 511, 516 (5th Cir. 1982). This lawsuit is based upon both a federal claim, pursuant to DOHSA, and state claims. DOHSA is silent as to service of process on nonresident defendants. Therefore, the Court will use Louisiana standards to determine whether AMO and Chinchilla are amenable to suit, *i.e.*, whether the Court may exercise personal jurisdiction over these defendants.

B.     *Forum Selection Clause*

Plaintiffs first argue that AMO and Chinchilla waived their right to object to the exercise of jurisdiction over them in the franchise agreement forum selection clause. The franchise agreement provides:

> The parties specifically stipulate to the exclusive jurisdiction of Louisiana courts and principally the United States District Court, Eastern District of Louisiana, as proper, for any and all claims or disputes that may arise between the parties irrespective of whether such claims arise in tort or contract or otherwise. The parties do hereby waive all <u>exceptions, defenses, and objections</u> to personal

jurisdiction and venue for the purpose of carrying out this provision.[34]

"Forum selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'" *Lejano v. K.S. Bandak*, 705 So. 2d 158, 166 (La. 1997) (*quoting M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 1913, 32 L. Ed. 2d 513, 520 (1972)). Furthermore, "[a] forum selection clause should be enforced absent a clear showing that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching." *Id.* (*citing M/S Bremen*, 407 U.S. at 15, 92 S. Ct. at 1916, 32 L. Ed. 2d at 523); *Vallejo Enter., L.L.C. v. Boulder Image, Inc.*, 950 So. 2d 832, 835 (La. Ct. App. 2006) ("Forum-selection clauses, or choice-of-exclusive-forum clauses, are *prima facie* valid, legal, and binding in Louisiana, and a party seeking to set aside such a provision bears a heavy burden of proof." (footnote omitted)). Defendants have provided no evidence or argument, and the Court finds no evidence, that the clause contained in the franchise agreement is unreasonable or unjust.

Because the Court has found that the clause is valid, it must next determine whether the clause waives AMO's and Chinchilla's objections to the exercise of jurisdiction in this Court. This agreement was entered into between AFFI, as franchisor, and AMO, as franchisee.[35] Because there are claims between AMO and AFFI,[36] the plain language of the clause provides

---

[34] Franchise agreement § XXII(B), at 45.

[35] *Id.* at 1.

[36] R. Doc. No. 127-4, pls. opp'n, ex. C, cross-clm. by AFFI against AMO and Chinchilla; R. Doc. No. 127-5, pls. opp'n, ex. D, answer and cross-clm. by AMO against AFFI and AFL.

that AMO waived any objection to this Court's exercise of jurisdiction over it.[37]  *See Am. Standard Leasing Co. v. Plant Specialties, Inc.*, 427 So. 2d 555, 556 (La. Ct. App. 1983) (*citing Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16, 84 S. Ct. 411, 414, 11 L. Ed. 2d 354, 358 (1964)).[38]  However, Chinchilla is not a party to the agreement and he is not bound by the waiver contained therein.[39]  Due to the Court's determination that AMO has waived any

---

[37] In addition, it is likely that AMO would be subject to the exercise of general personal jurisdiction regardless of the waiver provision. AMO was the franchisee of a Louisiana corporation, AFFI. AMO representatives attend annual franchise meetings in Louisiana. AFFI markets the cruises aboard AMO's vessel. AFL, also a Louisiana corporation, is the booking agent for trips aboard AMO's vessel. The franchise agreement was renewed on April 1, 2003, after negotiations between representatives of AMO and Hasson in Louisiana. There were frequent communications, by telephone and e-mail, between AMO and Aggressor fleet representatives in Louisiana regarding reservations, passenger lists, and bookings. R. Doc. No. 127-18, pls. opp'n, ex. L, Jose Pastora dep. at 176-77; R. Doc. No. 127-6, pls. opp'n, ex. E, Kenia M. Robertson dep. at 43. Weekly reports are sent from each of the Aggressor fleet franchisees, including AMO, to Aggressor fleet entities in Louisiana. R. Doc. No. 127-7, pls. opp'n, ex. F, Hasson dep. at 87-88. AMO has a Louisiana bank account that was used to receive money from cruise bookings and to pay certain dive masters, specifically Wright. R. Doc. No. 127-11, pls. opp'n, ex. G, Jorge Berrocal dep. at 53; Chinchilla dep. at 29. These facts are analogous to those in *Spomer*, in which the court found that the defendants were subject to the court's exercise of personal jurisdiction. *See* 807 So. 2d at 272-75

[38] In *Szukhent*, the Unites States Supreme Court stated, "It is settled, as the courts below recognized, that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether." 375 U.S. at 315-16, 84 S. Ct. at 414, 11 L. Ed. 2d at 358.

[39] Plaintiffs also argue that AMO and Chinchilla waived their jurisdictional defenses due to a choice of forum clause contained in the Aggressor fleet applications signed by Rubin and Ostrowiecki. The applications provide:

> JURISDICTION AND APPLICABLE LAW:  All claims against Aggressor Fleet, Ltd. arising under, in connection with, or incident to this agreement shall be determined according to the laws of Louisiana and shall be adjudicated in the courts of Louisiana, to the exclusion of the courts of any other state or country.

Plaintiffs argue that because a provision in the applications provides that the "Released Parties" include AFL, AFFI, AFFI's franchisees, the Vessel, the Vessel Owners, charterers and operators of the vessel, and their officers, directors, shareholders, agents, employees and affiliated companies, the jurisdictional provision applies to AMO, which is the vessel owner, and Chinchilla, who is an officer and shareholder of AMO.
"[T]he interpretation of an unambiguous contract is an issue of law for the court." *Amoco Prod. Co. v. Tex. Meridian Res. Exploration Inc.,* 180 F.3d 664, 668 (5th Cir. 1999). If the contract is unambiguous, the plain terms of the agreement govern. *Tubos de Acero de Mex., S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 486-87 (5th Cir. 2002); *see* La. Civ. Code Ann. art. 2046 (2008) ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). "In addition, a contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Tex. E. Transmission Corp. v. Amerada Hess Corp.,* 145 F.3d 737, 741 (5th Cir. 1998). The plain and unambiguous language of the applications provides that the jurisdictional provision shall apply in all claims against AFL, not in all claims against the "Released Parties." Therefore, it is inapplicable against AMO and Chinchilla.

objection to personal jurisdiction in this Court, the remaining analysis will only discuss this motion with respect to Chinchilla.

### C.     *Fiduciary Shield Doctrine*

Chinchilla argues that, even if AMO is subject to the Court's jurisdiction, personal jurisdiction over him cannot be predicated upon jurisdiction over AMO due to the fiduciary shield doctrine.  Plaintiffs respond that the fiduciary shield doctrine does not apply when a corporate officer, such as Chinchilla, has sufficient minimum contacts with the forum.

"It is settled that jurisdiction over individual officers and employees of a corporation may not be predicated merely upon jurisdiction over the corporation itself."[40]  *Cobb Indus., Inc. v. Hight,* 469 So. 2d 1060, 1063 (La. Ct. App. 1985); *see Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985) (noting that the fiduciary shield doctrine "holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual").  The doctrine "is rooted in the principle that the acts of a corporate officer in his corporate capacity cannot form the basis for jurisdiction over him in an individual capacity. When dealing with corporate officers, a court must look to the individual and personal contacts, if any, of the officer or employee, with the forum state." *Escoto v. U.S. Lending Corp.*, 675 So.

---

Plaintiffs' argument that the Aggressor fleet franchisees and entities do not distinguish among themselves and, therefore, claims against AFL are, in reality, claims against all Aggressor fleet franchisees does not change the Court's determination.  Upon finding that the contract is unambiguous and only applies with respect to claims against AFL, the Court may not further interpret the contract in search of the parties' intent.

[40] The Court notes that the fiduciary shield doctrine does not apply when the corporate entity is disregarded on the theory that the individual or subsidiary is the alter ego of the corporation or parent.  *See Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985).  Such an argument is not before the Court in this case.

2d 741, 745 (La. Ct. App. 1996) (citation omitted).

However, a defendant's "'status as [an] employee[] does not somehow insulate [him] from jurisdiction. Each defendant's contacts with the forum State must be assessed individually." *Seiferth v. Helicopteros Ataneros, Inc.*, 472 F.3d 266, 276 (5th Cir. 2006) (*quoting Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 1488, 79 L. Ed. 2d 804, 813 (1984)). Therefore, "jurisdiction over the corporation may also confer jurisdiction over the individual officers and employees where they are engaged in activities *within the jurisdiction* that would subject them to coverage of the state's long-arm statute." *Cobb Indus.*, 469 So. 2d at 1064. The fiduciary shield doctrine will not preclude a finding that this Court has jurisdiction over Chinchilla if Chinchilla's individual actions with Louisiana provide sufficient minimum contacts. *See Simmons v. J.C. Templeton*, 684 So. 2d 529, 535-36 (La. Ct. App. 1996).[41]

D.      *Personal Jurisdiction*

In the context of a motion filed pursuant to Rule 12(b)(2), a plaintiff must establish a court's personal jurisdiction over the defendant. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). When considering such a motion, the court must accept as true "[t]he allegations of the complaint, except insofar as controverted by opposing affidavits." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) (*citing DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270-71 (5th Cir. 1983)). Further, "all conflicts in the facts must be resolved in favor of

---

[41] In *Simmons*, the court exercised personal jurisdiction over nonresident defendants who were directors of a corporation with its principal place of business in Louisiana. 684 So. 2d at 536. The court noted that, because their corporation had its principal place of business in Louisiana, the defendants "had or should have had sufficient knowledge of Louisiana law to know that they could be held personally liable for aiding and abetting fraud in the corporation's dealings with Louisiana residents." *Id.*

the plaintiff for purposes of determining whether a prima facie case for personal jurisdiction has been established." *Id.*

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993).

With respect to the first prong, this Court must apply Louisiana's long arm statute, La. Rev. Stat. Ann. § 13:3201, because a nonresident defendant is subject to the personal jurisdiction of a federal court sitting in diversity in Louisiana to the same extent that the defendant would be amenable to the jurisdiction of a Louisiana court. *See Trinity Indus., Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 230 (5th Cir. 1995). However, the first prong of the personal jurisdiction analysis collapses into the second prong because Louisiana's long arm statute provides that a court may exercise jurisdiction over a nonresident defendant to the full extent provided by the Due Process Clause of the United States Constitution. *See* La. Rev. Stat. Ann. § 13:3201(B) (2006);[42] *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999); *Petrol. Helicopters, Inc. v. Avco Corp.*, 513 So. 2d 1188, 1190-91 (La. 1987).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which the individual has established no meaningful 'contacts, ties, or relations.'" *Dickson Marine*, 179 F.3d at 336 (*quoting Burger King Corp. v.*

---

[42] Louisiana's personal jurisdiction statute states, in pertinent part, that "a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States." La. Rev. Stat. Ann. § 13:3201(B).

*Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528, 540 (1985)).  The due process analysis is also two-pronged.

First, the defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95, 102 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 342-43, 85 L. Ed. 278, 283 (1940)).  The minimum contacts inquiry for personal jurisdiction may be subdivided into two categories:  general jurisdiction and specific jurisdiction.  *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996).[43]

Second, it must be reasonable to require the nonresident to defend the lawsuit in the forum state.  *See Burger King*, 471 U.S. at 476-78, 105 S. Ct. at 2184-85, 85 L. Ed. 2d at 543-44. Under the reasonableness prong, "[a] court must consider the burden on the defendant, the interests of the forum State, . . . the plaintiff's interest in obtaining relief[,] . . . 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92, 105 (1987) (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.

---

[43] "Specific jurisdiction applies when a nonresident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (*quoting Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001)).  "The 'minimum contacts' prong, for specific jurisdiction purposes, is satisfied by actions, or even just a single act, by which the non-resident defendant 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Ruston Gas*, 9 F.3d at 419 (*quoting Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183, 85 L. Ed. 2d at 542).  Purposeful availment "must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Id.* (*quoting World-Wide Volkswagen*, 444 U.S. at 297, 100 S. Ct. at 567, 62 L. Ed. 2d at 501).

Ct. 559, 564, 62 L. Ed. 2d 490, 498 (1980)).

### E.     *General Personal Jurisdiction*

General jurisdiction exists when a defendant's contacts with the forum state are not related to the cause of action, but are continuous and systematic. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999); *see Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 217 (5th Cir. 2000) (stating that in order to show contacts unrelated to the litigation are sufficient to satisfy due process, the contacts must be substantial, continuous, and systematic). "If a defendant has sufficient 'continuous and systematic' general contacts with the state, the forum may exercise general personal jurisdiction over the defendant for a 'cause of action [that] does not arise out of or relate to the [defendant's] activities in the forum state.'" *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 624 (5th Cir. 1999) (*quoting Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404, 411 (1984)) (citation omitted).

The basis for plaintiffs' allegation that Chinchilla's contacts with Louisiana are systematic and continuous arises out of the negotiation and maintenance of the franchise agreement between AMO and AFFI, including attendance at the annual franchise meeting and telephone and e-mail communications regarding operations, vessel equipment, customer complaints, crew issues, and other day-to-day operations.[44]

As detailed above, due to the fiduciary shield doctrine, Chinchilla's individual and

---

[44] Pls. mem. opp'n at 7-10.

personal contacts with Louisiana must be assessed. The negotiation of the franchise agreement and these communications between Chinchilla and AFFI in Louisiana were on AMO's behalf. Furthermore, "an exchange of communications between a resident and nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws." *Stuart v. Spademan*. 772 F.2d 1185, 1193 (5th Cir. 1985).

Looking to Chinchilla's individual contacts, the Court finds that they were not continuous and systematic. Chinchilla traveled to Louisiana a handful of times: once to negotiate the renewal of the franchise agreement, once to attend an industry trade show, and once to attend a funeral.[45] While the evidence establishes that AMO employees regularly communicated with AFFI in Louisiana, the evidence does not show the frequency or existence of communications between Chinchilla, specifically, and AFFI. Therefore, plaintiffs have failed to establish that Chinchilla had continuous and systematic individual contacts with Louisiana such that the Court has general personal jurisdiction over him.

### F. *Specific Personal Jurisdiction*

"Specific jurisdiction applies when a nonresident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (*quoting Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253

---

[45] R. Doc. No. 127-16, pls. opp'n, ex. J, Chinchilla dep. at 24-25.

F.3d 865, 867 (5th Cir. 2001)). "The 'minimum contacts' prong, for specific jurisdiction purposes, is satisfied by actions, or even just a single act, by which the non-resident defendant 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Ruston Gas*, 9 F.3d at 419 (*quoting Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183, 85 L. Ed. 2d at 542). Purposeful availment "must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Id.* (*quoting World-Wide Volkswagen*, 444 U.S. at 297, 100 S. Ct. at 567, 62 L. Ed. 2d at 501).

Plaintiffs' allege that Chinchilla's decision to discontinue the search for Rubin and Ostrowiecki and to continue the diving trip, partially forms the basis for L. Rubin's intentional infliction of emotional distress claim. This decision was made after a telephone conversation between Chinchilla and Hasson, who was in Louisiana at the time of the conversation.[46] Therefore, plaintiffs argue that the telephone conversation provides the basis for the Court's exercise of specific personal jurisdiction over Chinchilla.

First, Chinchilla's decision to follow the advice of Hasson and to continue the diving trip, despite Ostrowiecki's and Rubin's disappearance, could have been conduct engaged in as an officer of AMO, and he would be entitled to protection from the fiduciary shield doctrine. However, the Court assumes for the purposes of the following analysis that this was not conduct

---

[46] *Id.* at 98; Hasson dep. at 205. Chinchilla testified:
> A. Well, I talked to Wayne Hasson. People was asking if they were going to continue diving because that was the second or the third day. And the suggestion that Wayne gave to me was to allow them to continue to dive. And so I told the captain that they can continue diving.
> Q. So Wayne suggested that you continue to have the passengers continue diving?
> A. Yes.

Chinchilla dep. at 98.

engaged in solely as an officer of AMO, and Chinchilla would not, therefore, be entitled to protection under the fiduciary shield doctrine. *See Lewis*, 252 F.3d at 359 n.6 ("'[T]he shield is removed if the individual's personal interests motivate his actions . . . .'" (*quoting Darovee Mktg. Group, Inc. v. Bio-Genics, Inc.*, 42 F. Supp. 2d 810, 819 (N.D. Ill. 1999)).

The Court must next determine whether Chinchilla's telephone conversation with Hasson in Louisiana is sufficient evidence that Chinchilla purposefully directed his activities at Louisiana. Telephone conversations with the forum state can be sufficient evidence of minimum contacts to confer specific personal jurisdiction over a defendant. *See Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001); *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999).[47] During Chinchilla's telephone call to Hasson, Hasson suggested to Chinchilla that the diving trip continue. Chinchilla then made the decision to continue the diving trip and communicated this decision to the captain of the OKEANOS.[48] There is no evidence that Chinchilla was purposefully availing himself of "the privilege of causing a consequence" in the forum. Chinchilla was instead causing a consequence outside of the forum. *See Brandt*, 195 F.3d at 213. Furthermore, the communication to Hasson, who is allegedly a resident of Florida and/or

---

[47] In *Lewis*, the defendants participated in a telephone conversation "designed to convince" plaintiff, a forum resident, to make a loan. 252 F.3d at 358. One of the defendants, during that conversation, failed to correct false statements made by the other defendant. *Id.* Furthermore, the defendants sent stock certificates and security agreements containing fraudulent misstatements to the plaintiff in the forum state. *Id.* The United States Court of Appeals for the Fifth Circuit held that minimum contacts existed because the "actual content" of the communications gave rise to the cause of action and showed purposeful availment of the benefits and protections of the forum state's law.

Similarly, in *Brandt*, the defendant performed several tortious actions outside of the forum state directed toward the plaintiff in the forum state. 195 F.3d at 212. The communications with the plaintiff contained fraudulent misrepresentations that formed the basis of the lawsuit. *Id.* The Fifth Circuit found that because the actual content of the communications gave rise to the cause of action, the defendant had purposefully availed himself of the privilege of causing a consequence in the forum state. *Id.* at 213.

[48] Chinchilla dep. at 98; R. Doc. No. 127-18, pls. opp'n, ex. L, Jose Pastora dep. at 63.

the Cayman Islands, but who was in Louisiana at the time of the call, "rest[s] on nothing but 'the mere fortuity that'" Hasson happened to be located in the forum at the time. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (*quoting Patterson*, 764 F.2d at 1147); *Clark v. Am.'s Favorite Chicken Co.*, 908 F. Supp. 390, 396-98 (E.D. La. 1995).  The telephone conversation at issue was even more attenuated that the communications in *Holt Oil*.  In that case, the communications to the plaintiff, a resident of the forum, in the course of developing and carrying out a contract, were insufficient to constitute purposeful availment of the benefits and protections of the forum's law.  In this case, the conversation was between two defendants (not a defendant and a plaintiff), and the person receiving the call in the forum is not a resident of the forum, but just happened to be in Louisiana at the time.

Chinchilla has insufficient minimum contacts with Louisiana to subject him to the jurisdiction of this Court.[49]  *See Aviles v. Kunkle*, 978 F.2d 201, 205 (5th Cir. 1992) (holding that one telephone call and one letter into the forum advising the plaintiffs of their employment start dates were insufficient to justify exercising personal jurisdiction over the defendant); *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985) (holding that telephone calls made by the defendant to the forum, payments wired by the defendant to the forum, and contracts entered into with forum shipowners were insufficient to establish that the defendant purposefully availed itself of the forum).  Accordingly,

**IT IS ORDERED** that the motion to dismiss for lack of personal jurisdiction filed on

---

[49] Due to the Court's determination that Chinchilla has insufficient minimum contacts with Louisiana, it need not address the second prong of the due process personal jurisdiction analysis, *i.e.*, the reasonableness prong. Furthermore, the Court need not address Chinchilla's alternative argument that plaintiffs' have failed to state a claim against him.

behalf of defendants, Aventuras Maritimas Okeanos, S.A., and Randall Martinez Chinchilla,[50] is **GRANTED IN PART AND DENIED IN PART**. **IT IS DENIED** as to defendant Aventuras Maritimas Okeanos, S.A. **IT IS GRANTED** as to defendant Randall Martinez Chinchilla.

**IT IS FURTHER ORDERED** that all claims in the above-captioned cases against Randall Martinez Chinchilla are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion to dismiss for failure to state a claim filed on behalf of defendant, Randall Martinez Chinchilla,[51] is **DISMISSED AS MOOT**.

New Orleans, Louisiana, May 30, 2008.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[50] R. Doc. No. 74.

[51] *Id.*