**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TATIANA OSTROWIECKI,** *et al.* | **CIVIL ACTION** |
| **VERSUS** | **No. 07-6598** |
| **AGGRESSOR FLEET, LTD.,** *et al.* | **SECTION: I/5** |
| c/w | |
| **SONDRA RUBIN,** *et al.* | **CIVIL ACTION** |
| **VERSUS** | **No. 07-6931** |
| **AGGRESSOR FLEET, LTD.,** *et al.* | \*\*\*\*This order applies to both cases. |

**ORDER AND REASONS**

Before the Court are several motions *in limine* to exclude expert testimony. First, is plaintiffs' motion to exclude certain testimony of the dive liability expert, Bret Gilliam ("Gilliam"), retained by Aggressor Fleet, Ltd. ("AFL"), Aggressor Fleet Franchising, Inc. ("AFFI"), Wayne Hasson ("Hasson"), and Randal Wright ("Wright"), an employee of Aventuras Maritimas Okeanos, S.A. ("AMO"). Plaintiffs also seek to exclude the testimony of Craig Jenni ("Jenni"), a dive liability expert, formerly retained by AMO and Randall Martinez Chinchilla ("Chinchilla"), and "now retained by Shipowners' Mutual Protection and Indemnity Association (Luxembourg) ("Shipowners")".[1] Second, is a motion filed on behalf of defendants, AFFI, AFL, Hasson, and Wright, to exclude the testimony of plaintiffs' liability expert, Walter Hendrick.[2]

---

[1] R. Doc. No. 185.

[2] R. Doc. No. 187.

1

Third, is a motion filed on behalf of AFFI, AFL, Hasson, and Wright, to preclude introduction of evidence or testimony regarding certain cases related to Gilliam.[3]

For the following reasons, plaintiffs' motion to exclude testimony of Gilliam and Jenni[4] is **GRANTED IN PART, DENIED IN PART, DEFERRED IN PART, AND DISMISSED AS MOOT IN PART**. Defendants' motion to exclude the expert testimony of Hendrick[5] is **GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART**. Defendants' motion to preclude the introduction of evidence and testimony regarding cases relating to Gilliam[6] is **DEFERRED**.

## *BACKGROUND*

Israel Ostrowiecki ("Ostrowiecki"), Bruce Rubin ("Rubin"), and Rubin's daughter, Lilith Rubin ("Lilith"),[7] were three of nineteen passengers on a ten-day cruise and recreational scuba diving expedition aboard the D/V OKEANOS AGGRESSOR ("OKEANOS").[8] Ostrowiecki,

---

[3] R. Doc. No. 229.

[4] R. Doc. No. 185.

[5] R. Doc. No. 187.

[6] R. Doc. No. 229.

[7] Ostrowiecki was a resident of Brazil, Rubin was a resident of New Mexico, and Lilith is allegedly a resident of both New Mexico and Louisiana. R. Doc. No. 1-9, notice of removal, Ostrowiecki pet. ¶ 1; R. Doc. No. 1-9, notice of removal, Rubin second am. pet. ¶ 2; R. Doc. No. 49-5, mot. summ. j., ex. C, L. Rubin dep. at 9-12.

[8] Ostrowiecki pet. ¶¶ 12, 15; Rubin second am. pet. ¶¶ 2, 13. The OKEANOS is owned and operated by Aventuras Maritimas Okeanos, S.A. ("AMO"), which is a Costa Rican corporation with its principal place of business and headquarters in San Jose, Costa Rica. R. Doc. No. 74-3, AMO mot. to dismiss, ex. A, Randall Martinez Chinchilla aff. ¶¶ 3, 9; R. Doc. No. 74-3, AMO mot. dismiss, ex. A, Chinchilla second aff. ¶ 2. At the time of this cruise, AMO was a franchisee of AFFI, the franchisor for the Aggressor fleet; AFFI is a Louisiana corporation. Chinchilla aff. ¶ 11; Ostrowiecki pet. ¶ 5. AFFI assists in marketing cruises onboard the OKEANOS for diving off the coast of Costa Rica; AFFI also promulgates and enforces standards for the operation of OKEANOS cruises off the Costa Rican coast. Chinchilla aff. ¶ 11. AFL, also a Louisiana corporation, is the booking agent for scuba diving trips aboard vessels operating as Aggressor fleet franchisees, including the

Rubin, and Lilith boarded the OKEANOS on May 12, 2003, at Puntarenas, Costa Rica, where the diving trip originated.[9] Before traveling aboard a smaller vessel, or skiff, to the specific dive site, the divers would prepare aboard the OKEANOS for the daily dives.[10]

On May 16, 2003, Ostrowiecki, Rubin, and Lilith prepared for the second dive of the day and traveled from the OKEANOS to a dive site near the Cocos Islands, approximately three hundred miles off the coast of Costa Rica.[11] Ostrowiecki, Rubin, and Lilith were three of nine divers on this particular dive.[12] The dive was supervised by Wright, an employee of the vessel owner, AMO; Wright was employed as a dive master aboard the OKEANOS.[13]

Several of the other divers allegedly aborted the dive early because of turbulent diving conditions.[14] Fifty minutes after the dive began, seven of the nine divers, including Lilith, were back on the skiff.[15] For forty-five minutes, the skiff searched, to no avail, for the remaining divers, Ostrowiecki and Rubin.[16] On May 17, 2003, around 2:00 a.m., the OKEANOS

---

OKEANOS.  Ostrowiecki pet. ¶ 4.

[9] Ostrowiecki pet. ¶¶ 13, 14; Rubin second am. pet. ¶¶ 14, 17.

[10] Ostrowiecki pet. ¶ 14; Rubin second am. pet. ¶ 17.

[11] Ostrowiecki pet. ¶¶ 11, 15; Rubin second am. pet. ¶¶ 12, 19; R. Doc. No. 120-4, opp'n, ex. C, David Inman dep. at 99.

[12] Ostrowiecki pet. ¶ 15; Rubin second am. pet. ¶ 19.

[13] R. Doc. No. 1-9, notice of removal, Ostrowiecki second am. pet.

[14] Ostrowiecki pet. ¶¶ 18-19; Rubin second am. pet. ¶ 22.

[15] Ostrowiecki pet. ¶ 20; Rubin second am. pet. ¶ 23. Lilith's dive lasted approximately thirty-five minutes. Ex. A, Lilith dep. at 67; R. Doc. No. 71-7, mot. dismiss Sondra's clms., ex. C, May 16, 2003, dive log.

[16] Ostrowiecki pet. ¶¶ 20-23; Rubin second am. pet. ¶¶ 23-26.

discontinued its search for Rubin and Ostrowiecki[17], both of whom disappeared at sea during this dive.[18]

On November 5, 2003, the Ostrowiecki plaintiffs, Tatiana Ostrowiecki, Alexandre Ostrowiecki, and Susan Sverner on behalf of a minor child, Julia Helena Ostrowiecki, filed their petition in Orleans Parish Civil District Court against AFL, AFFI, Aggressors International, Ltd. ("AIL"),[19] AMO, Hasson,[20] Chinchilla,[21] and XYZ Insurer.[22] Two days later, the Rubin plaintiffs also filed their petition in Orleans Parish Civil District Court against the same seven defendants.[23]

The Ostrowiecki and Rubin plaintiffs seek damages for defendants' negligence, breach of contract, and misrepresentations.[24] The Rubin plaintiffs also allege intentional and negligent infliction of emotional distress and seek bystander damages pursuant to La. Civ. Code Ann.

---

[17] Ex. A, Lilith dep. at 86; R. Doc. No. 71-16, mot. dismiss Sondra's clms., ex. L, Hasson dep. at 226-27; R. Doc. No. 120-6, opp'n, ex. K, Wright dep. at 115-16; R. Doc. No. 71-18, mot. dismiss Sondra's clms., ex. N, Jorge Berrocal dep. at 193.

[18] Ostrowiecki pet. ¶¶ 11, 27; Rubin second am. pet. ¶¶ 12, 31.

[19] AIL allegedly assists in marketing for Aggressor Fleet franchisees, including the OKEANOS. Ostrowiecki pet. ¶ 6. AIL was dismissed as a defendant from the lawsuit when the Louisiana Fourth Circuit Court of Appeals granted AIL's writ application with respect to personal jurisdiction. R. Doc. No. 24-2, mem. supp. of joint mot. to remand at 7 n.4.

[20] Hasson is allegedly an owner of AIL and the Aggressor Fleet franchise "Operations Manager Captain" for all of the Aggressor fleet vessels, including the OKEANOS. Ostrowiecki pet. ¶ 8. Hasson is allegedly a resident of Florida and/or the Cayman Islands. *Id.*

[21] Chinchilla is the president and a shareholder of AMO and a Costa Rican citizen. Ostrowiecki pet. ¶ 9; Chinchilla aff. ¶ 2. On May 30, 2008, the Court granted Chinchilla's motion to dismiss for lack of personal jurisdiction and dismissed all plaintiffs' claims against him. R. Doc. No. 239.

[22] *Id.*

[23] *Rubin v. Aggressor Fleet, Ltd.*, Civil Action No. 07-6931, R. Doc. No. 1-6, notice of removal, ex. C, Rubin pet. (E.D. La. Oct. 9, 2007).

[24] Ostrowiecki pet. ¶¶ 34-51; Rubin second am. pet. ¶¶ 39-61.

article 2315.6 (1997).[25] The plaintiffs amended their joint petition on July 23, 2007, adding an alternative claim pursuant to the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 30301-30308 (2006).[26]

*LAW AND ANALYSIS*

**I.      Standard of Law**

Rule 702 of the *Federal Rules of Evidence* governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469, 480 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify

---

[25] Rubin second am. pet. ¶¶ 54-57. On December 4, 2003, defendants removed the cases to this Court, claiming that DOHSA provided "the exclusive remedy for any person claiming damages as the result of death occurring on the high seas." *Rubin v. Aggressor Fleet Ltd.*, Civil Action No. 03-3408, R. Doc. No. 1, notice of removal ¶ 5 (E.D. La. Dec. 4, 2003); *Ostrowiecki v. Aggressor Fleet Ltd.*, Civil Action No. 03-3409, R. Doc. No. 1, notice of removal ¶ 5 (E.D. La. Dec. 4, 2003). The Ostrowiecki and Rubin plaintiffs filed a joint motion to remand, which the Court granted.

On May 6, 2004, the Ostrowiecki plaintiffs amended their petition to add Wright as a defendant; on May 10, 2004, the Rubin plaintiffs added Wright as a defendant. Ostrowiecki second am. pet.; Rubin first am. pet. On June 17, 2004, the two lawsuits were consolidated by the Orleans Parish Civil District Court. *Ostrowiecki v. Aggressor Fleet, Ltd.*, Civil Action No. 2003-16697 (Orleans Parish Civ. Dist. Ct. June 17, 2004).

On April 7, 2006, plaintiffs amended their joint petition to add three insurers, Certain Underwriters at Lloyds, London ("Lloyds"), Travelers Property Casualty Corporation ("Travelers"), and Shipowners. R. Doc. No. 24-4, joint mot. remand, ex. C, joint fourth am. pet. Lloyds provided underwater liability insurance to defendants Wright, AFL, AFFI, Hasson, and AMO. Travelers provided general commercial liability insurance to defendants AFL and Hasson. Shipowners is a mutual marine protection and indemnity (P&I) association organized under the laws of Luxembourg with its managing agent in London, England. R. Doc. No. 49-7, Shipowners mot., ex. E, Simon Swallow aff. ¶ 6.

On October 9, 2007, Shipowners removed. *See Ostrowiecki v. Aggressor Fleet, Ltd.*, Civil Action No. 07-6598, R. Doc. No. 1; *Rubin v. Aggressor Fleet, Ltd.*, Civil Action No. 07-6931, R. Doc. No. 1. On December 12, 2007, this Court denied the plaintiffs' motion to remand. R. Doc. No. 44. On May 20, 2008, this Court granted Shipowners' motion for summary judgment and dismissed all of plaintiffs' claims against it. R. Doc. No. 232.

[26] Notice of removal, ex. C, joint fifth am. pet.

> thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238, 249-50 (1999). The burden is on the plaintiff to prove by a preponderance of the evidence that the expert satisfies the Rule 702 test. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining '*how* to test an expert's reliability.'" (*citing Kumho Tire*, 526 U.S. at 152, 119 S. Ct. at 1176, 143 L. Ed. 2d at 253)). "Both the determination of reliability itself and the factors taken

into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (*quoting* Fed. R. Evid. 702 advisory committee's note).

## II. Analysis

*A.     Defendants' Dive Liability Expert Bret Gilliam*

Gilliam is being offered as an expert in:

> Dive training standards and procedures for divers and instructors; curricula for dive training; maritime operations and procedures for ocean-going passenger vessels; dive safety; proper procedures and standards for live-aboard diving vessel; diving conditions and dive sites at Cocos Island and surrounding area; diving protocols, emergency procedures and search efforts; and any other matters discussed in my expert witness report and deposition.[27]

Gilliam, in his expert report, determined that Ostrowiecki and Rubin "most likely never

---

[27] R. Doc. No. 185-3, mem. supp., ex. A, Gilliam dep. at 7-8.

-7-

surfaced from the dive, went missing, and were later declared dead."[28] He bases his opinion on the experience of the divers and the fact that none of the other divers, including the skiff diver and Wright, saw Ostrowiecki and Rubin surface, despite the necessity that they do so no more than sixty minutes after submerging. Gilliam also supports his theory by arguing that each diver carried signaling devices and although Ostrowiecki's and Rubin's bodies were never found, the dive tank and safety sausage, a signaling device, were located.[29] Gilliam concludes that the divers did not surface at all due to some event that occurred underwater.[30] These possible underwater events include: (1) an idiosyncratic medical or health event, (2) equipment failure, or (3) attack by marine life.[31]

Gilliam also discusses the activities and actions of Wright, AFL, AFFI, and Hasson.[32] Gilliam concludes that: (1) Wright performed his duties in accordance with standard procedures; (2) Wright was properly trained and qualified to be a dive master at Cocos Island; (3) AFL and AFFI provided a proper operations manual, inspections, and training; and (4) Hasson performed, in all respects, his duties which included coordinating marketing, franchise relationships, and periodic inspection of the franchisees.[33] Gilliam lastly states that AFFI, AFL, Wright, and Hasson met the applicable standards of care and that the deaths of Ostrowiecki and Rubin cannot

---

[28] R. Doc. No. 185-3, mem. supp. ex. B, Gilliam report at 3.

[29] *Id.* at 3-5.

[30] *Id.* at 5.

[31] *Id.*

[32] *Id.* at 6.

[33] *Id.*

be attributed to these defendants.[34]

Plaintiffs argue that Gilliam's testimony should be partially excluded to the extent it: (1) is not included as part of his expert report, (2) contains speculation and conjecture, and (3) usurps the role of the jury by containing factual and legal conclusions.[35]  Defendants respond that Gilliam used his experience, knowledge, and training to arrive at his opinions regarding Ostrowiecki's and Rubin's disappearances.[36]

Plaintiffs' first argument is that Gilliam's testimony regarding the possible causes of Ostrowiecki's and Rubin's underwater deaths and Gilliam's theory as to why the dive tank was found disconnected from the regulator and BCD[37] should be excluded.[38]  "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996).  However, if

> the source upon which an expert's opinion relied is of such little weight[,] the jury should not be permitted to receive that opinion. Expert opinion testimony falls into this category when that testimony would not actually assist the jury in arriving at an intelligent and sound verdict. If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury. Furthermore, its lack of reliable support may render it more prejudicial than probative,

---

[34] *Id.* at 7.

[35] R. Doc. No. 185-2, mem. supp. at 2.

[36] R. Doc. No. 200, mem. opp'n at 5-8.

[37] Gilliam testifies in his deposition, but makes no mention in his report, that Rubin's dive tank was found without a regulator and buoyancy device compensator ("BCD") attached because, more than likely, passing fishing boats would have taken these expensive parts and thrown the empty tank back into the ocean. Gilliam dep. at 318-19.

[38] Mem. supp. at 6-9.

>  making it inadmissible under [Rule] 403.

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

There is evidence that the divers never surfaced and the Court will allow expert testimony relating to the basis for such a conclusion. Gilliam's testimony regarding the possible causes of the divers' underwater deaths offers alternative explanations which may support the "surfacing" issue and are subject to cross examination. Gilliam's speculation as to why the dive tank was disconnected from the regulator and BCD is excluded. Any such testimony would not assist the jury in arriving at its verdict and would not be based upon any reliable evidence.

Plaintiffs also argue that Gilliam's testimony that the divers, if they had surfaced, would have drifted within one hundred miles of Cocos Island and been able to swim to the shore is speculative.[39] Gilliam testified that, "[t]he pattern of drift is directly to the southeast. Which means if you don't do anything at all, you're going to drift right by the point [of Cocos Island]."[40] He further testified: "It's happened before with other divers that found themselves out this way. They actually kicked back to the island and recovered on the beach or on the face of the rocky shore."[41] Gilliam bases his opinion on the typical currents and prior occurrences at this dive site. It is "the role of the adversarial system, not the court, to highlight weak evidence." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004). Plaintiffs' argument goes to the weight to be given to Gilliam's testimony and not its admissibility. Therefore, the

---

[39] *Id.* at 7-8.

[40] Gilliam dep. at 252-53.

[41] *Id.* at 253.

Court will not exclude such testimony.[42]

Plaintiffs next argue that Gilliam's testimony should be limited to the extent that it merely offers legal and factual conclusions.[43]

> Rule 704 . . . does not open the door to all opinions. The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give *legal* conclusions.

*Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983), *cited in Arreola v. Epic Divers, Inc.*, Civil Action No. 05-2788, 2006 WL 5153148, at *1 (E.D. La. Oct. 25, 2006) (Zainey, J.). Gilliam's testimony may embrace ultimate issues of fact as long as it does not merely state a conclusion for the jury to reach or state a purely legal conclusion. *See id.* The Court is unable to make a definitive ruling with respect to such objection until it has listened to the trial testimony and heard the context within which such testimony is offered. Accordingly, such objection is deferred until trial.

Finally, plaintiffs contend that Gilliam should be precluded from testifying: (1) that neither AFFI nor AFL had direct involvement in the operation of the OKEANOS and (2) about Hasson's role on behalf of AFL.[44] Gilliam is not an expert qualified to testify as to the structure

---

[42] The fact that this testimony is outside the scope of his expert report does not support its exclusion. "The basic purpose of [Rule 26(a)(2)(B)] . . . is to prevent unfair surprise with respect to the expert's testimony." *Davis v. Parker Drilling Co.*, No. Civ.A. 01-2355, 2003 WL 1824834, at *1 (E.D. La. Apr. 7, 2003) (Berrigan, J.) (*citing Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994)). There is no unfair surprise to plaintiffs, who questioned Gilliam, eliciting testimony outside the scope of his expert report. Plaintiffs were, therefore, aware of such testimony and plaintiffs have had adequate opportunity to prepare their case. *See id.*; *Knorr v. Dillard's Store Servs., Inc.*, No. Civ.A. 04-3208, 2006 WL 3344190, at *2 (E.D. La. Nov. 16, 2006) (Vance, J.).

[43] Mem. supp. at 9-10.

[44] *Id.* at 10-11.

-11-

of AFFI or AFL, Hasson's role in AFL, or to what extent AFFI and AFL were involved with the operation of the OKEANOS. The structure, functions, and involvement of these defendants is a factual issue to be developed through other competent testimony. Therefore, Gilliam's testimony in these respects is excluded.

B.   *Shipowners' Dive Liability Expert Craig Jenni*

Considering the Court's previous order dismissing Shipowners as a defendant in the above-captioned action,[45] plaintiffs' motion to exclude the testimony of Shipowners' dive liability expert, Jenni, is dismissed as moot.

C.   *Plaintiffs' Liability Expert Walter Hendrick*

On September 10, 2007, Hendrick provided an expert report to plaintiffs regarding the factors and events that led to Ostrowiecki's and Rubin's deaths.[46] Hendrick's report states that: (1) the Aggressor fleet staff was improperly trained or evaluated, (2) the Aggressor fleet's standard operating procedure manual ("SOP") was inadequate, (3) Aggressor fleet standards were ignored or misused, (4) the OKEANOS should have had an emergency action plan, (5) the OKEANOS lacked safety equipment and did not maintain and properly inspect equipment, (6) dive briefings were inadequate for conditions at Cocos Island, (7) Wright was not adequately trained as to the function of a checkout dive, (8) the dive at Dos Amigos Pequenos should not have been conducted due to the diving conditions, (9) Wright should have aborted the dive, (10) the procedures conducted during the dive were substandard and dangerous, (11) Ostrowiecki and

---

[45] R. Doc. No. 232.

[46] R. Doc. No. 187-8, mem. supp., ex. 5, Hendrick report.

Rubin did not contribute to their own deaths, (12) Ostrowiecki and Rubin were separate and alone when they were lost and until their deaths, (13) Lilith was not responsible for the death of her father, (14) the initial search operation was not properly conducted, and (15) Ostrowiecki and Rubin should have been under Wright's direct supervision during the dive.[47]

Defendants argue that Hendrick's report and testimony should be excluded because Hendrick is not qualified as an expert for the issues relevant to this case, his testimony is unreliable and irrelevant, he states legal conclusions, and he fails to comport with Rule 26 of the *Federal Rules of Civil Procedure*.[48]

*1. Hendrick's Qualifications*

Defendants first argue that Hendrick's qualifications do not allow him to give expert testimony about search efforts on the open sea or about the dive conditions at Cocos Island because he is not an expert in maritime navigation or vessel operations and he has no firsthand knowledge of the Cocos Islands.[49] Defendants also contend that Hendrick lacks the expertise to testify regarding Wright's dive certifications and training.[50]

Hendrick does not aver that he is a marine captain or ocean navigator, and he has not been qualified as an expert in marine or vessel navigation.[51] Although Hendrick has never, as a

---

[47] *Id.*

[48] R. Doc. No. 187-2, mem. supp. at 2-3.

[49] Mem. supp. at 5-7. Defendants do not argue that Hendrick is unqualified to testify as an expert in dive safety and dive search and rescue operations. Rather, defendants are contending that Hendrick's testimony should be excluded because in this particular case he is not qualified in those areas.

[50] *Id.* at 10-11.

[51] *Id.* at 165-66, 399.

captain, directed a missing person search on the open seas,[52] he has taught dive operators in the Caribbean how to run dives, take care of tourists when they run out of air, and search for divers missing at sea.[53] He did review the search patterns completed following the disappearances of Ostrowiecki and Rubin.[54]

> Hendrick explained his expertise as:
>
>> teaching and caring for people.
>>
>> It is teaching instructors and dive masters how to run diving operations, how to conduct diving operations, how to control and handle people in the water in safe manners, how to deal with emergency procedures underwater and at the surface for dives, how to take people from, whether it is a land-based operation or a live-aboard vessel, which is a floating island, and how to keep them safe and get them back to their original dive locations and back to their vessel or hotel.
>>
>> It is to teach them how to get people in the water, out of the water, and do it in a fashion that gives them responsibility and keeps them alive.
>>
>> My expertise is in dealing with what to do with emergencies that take place underwater, and when an individual is lost, in a reasonable small area, less than 25 miles, how to basically find them.[55]

Hendrick has never been to Cocos Island or to Costa Rica, although he did review the relevant currents at Cocos Island.[56] In determining that on the date of this tragedy the currents were stronger at the dive site than normal, Hendrick relied upon the testimony of other divers at

---

[52] *Id.* at 43.

[53] *Id.* at 402-03.

[54] R. Doc. No. 187-7, mem. supp., ex. 4, Hendrick dep. at 15, 16.

[55] *Id.* at 59-60.

[56] Hendrick dep. at 74.

the dive location on the day of the disappearance as well as the testimony of the divemaster, Wright.[57]

Hendrick has extensive experience training and developing search procedures for missing divers, as well as training and experience scuba diving. The strength of Hendrick's credentials with respect to the open sea specifically goes to the weight of his testimony and not its admissibility. *See Williams v. Warren*, 253 F.3d 700 (5th Cir. 2001) (holding that an expert was qualified to discuss broken bones even though he was not an orthopedic surgeon and that the strength of his "credentials go to the weight, not the admissibility" of his testimony). Defendants' argument that Hendrick is unqualified due to a lack of firsthand knowledge regarding the Cocos Islands is without merit. *See Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796, 125 L. Ed. 2d at 482 ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based upon firsthand knowledge or observation."). Therefore, Hendrick's testimony is not excluded on the basis of such argument.

Defendants further contend that Hendrick's qualifications are inadequate for him to testify about the Aggressor fleet SOP and the operations, search procedures, and equipment of a live-aboard diving vessel, including the duties and training of the captain and crew.[58] Hendrick has never written a SOP for a diving franchisee, but he has training, through the fire service, in writing diving SOPs.[59] Hendrick concludes that the Aggressor fleet staff was not properly trained or evaluated, but that he is unfamiliar with the AFL employees and he cannot, therefore,

---

[57] *Id.* at 245-46.

[58] Mem. supp. at 8-10.

[59] Hendrick dep. at 249-50.

render an expert opinion regarding the negligent training or supervision of those employees.[60] Hendrick also states that the Aggressor fleet SOP does not have relevance to AFL employees.[61]

While Hendrick has a sufficient basis to testify about the Aggressor fleet SOP and the adequacy of the search procedures conducted, Hendrick cannot render an expert opinion regarding the alleged negligent training and supervision of AFL employees.  Hendrick does not have a sufficient basis to testify with respect to those employees and their alleged inadequate training and supervision.

Concerning live-aboard diving vessels, Hendrick has never commanded a live-aboard diving vessel.  Between fifteen to seventeen years ago, Hendrick did train the crew of a live-aboard vessel about diving operational safety, search and rescue, and diving emergencies.[62] Although Hendrick has never been involved in a case regarding live-aboard diving and he has never been qualified as an expert in such a case,[63] Hendrick has experience aboard live-aboard vessels as a diving instructor and trainer focused on man-overboard procedures, diving operational safety, searching for divers, and emergency procedures.[64]  He also has inspected a live-aboard vessel's safety procedures.[65]

Hendrick's qualifications are sufficient to allow him to testify about the adequacy of the

---

[60] *Id.* at 344-45.

[61] *Id.* at 345.

[62] *Id.* at 47-57.

[63] *Id.* at 164-65.

[64] *Id.* at 42, 50-51, 56.

[65] *Id.* at 42.

search procedures, despite having less knowledge concerning live-aboard vessels than diving accidents occurring off of land-based diving trips. Hendrick may, to the extent that he can provide a sufficient basis for his opinions, testify regarding the adequacy of the search efforts, the SOP, and the actions of the crew.

*2. Reliability and Relevancy of Hendrick's Expert Testimony*

Defendants contend that Hendrick's testimony is not relevant because he "merely rehash[es] the testimony of various passengers" and he only has expertise in the field of public safety diving.[66] However, Hendrick's expertise is not solely limited to the field of public safety diving; the Court is also not convinced that his experience in public safety and other diving does not translate to the diving in this case. Hendrick's testimony does not merely rehash factual testimony related by others. Defendants objection to such testimony on those grounds is rejected.

*3. Legal Conclusion Testimony*

Defendants allege that the legal conclusions contained in Hendrick's report and testimony about such conclusions should be excluded.[67] Plaintiffs argue that Hendrick's opinions about the standard of care expected of divemasters and diving operators should be admitted because those opinions will assist the jury in understanding safety standards and duties in this specialized industry.[68] As stated above, an expert cannot render opinions regarding

---

[66] *Id.* at 14. Defendants argument regarding Hendrick's lack of firsthand knowledge and his testimony's alleged unreliability has been previously addressed.

[67] Mem. supp. at 14-15.

[68] R. Doc. No. 201, mem. opp'n at 20-22.

conclusions of law. *Owen*, 698 F.2d at 240; *see United States v. $9,041,598.68*, 163 F.3d 238, 255 (5th Cir. 1998) ("This Court, however, has repeatedly held that Rule 704 does not allow an expert to render conclusions of law."). The extent to which Hendrick's testimony states legal conclusions will be deferred until trial.[69] Hendrick will, however, be permitted to testify as to industry standards.

D.  *Defendants' Motion To Preclude Reference to Cases Regarding Gilliam*

Defendants argue that plaintiffs should be precluded from offering evidence and testimony regarding certain other cases related to defendants' expert, Gilliam.[70] Defendants contend that the other cases in which Gilliam was involved cannot be introduced because a witness's character for truthfulness cannot be proved by extrinsic evidence.[71] Further, defendants argue that cross-examination of Gilliam with respect to those cases should not be allowed because the probative value is substantially outweighed by the danger of unfair prejudice and confusion to the jury.[72]

Rule 608(b) of the Federal Rules of Evidence provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness,

---

[69] Defendants also argue that Hendrick's report should be stricken and his report excluded because his report did not comply with Federal Rule of Civil Procedure 26(a)(2). Mem. supp. at 15-16. However, given the complicated procedural history and late removal of the above-captioned action, in addition to the lack of evidence that plaintiffs failed to comply with Rule 26 after removal, the Court will not exclude Hendrick's testimony for this reason.

[70] R. Doc. No. 229-3, mem. supp.

[71] *Id.* at 4-5.

[72] *Id.* at 5-7.

> be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

As plaintiffs note, introduction of the exhibits at issue[73] to prove Gilliam's character for truthfulness is specifically prohibited by Rule 608(b). However, plaintiffs advise that they may use such documents to impeach Gilliam at trial. The Court defers a ruling until trial. However, the Court notes that "there is no right to impeach a witness with respect to collateral or irrelevant matters . . . . [A] party cannot delve into collateral matters on its own initiative and then claim a right to impeach that testimony with contradictory evidence." *Jones v. S. Pac. R.R.*, 962 F.2d 447, 450 (5th Cir. 1992). Prior to any attempt to introduce such impeachment evidence, plaintiffs must convince the Court that the testimony is admissible.

Accordingly,

**IT IS ORDERED** that plaintiffs' motion to exclude testimony of Gilliam and Jenni[74] is **GRANTED IN PART, DENIED IN PART, DEFERRED IN PART, AND DISMISSED AS MOOT IN PART**.

**IT IS FURTHER ORDERED** that defendants' motion to exclude the expert testimony of Hendrick[75] is **GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART** in accordance with this order.

**IT IS FURTHER ORDERED** that defendants' motion to preclude the introduction of

---

[73] R. Doc. No. 229-4, mem. supp. ex. 1, pls.' supp. ex. list, nos. 127, 128.

[74] R. Doc. No. 185.

[75] R. Doc. No. 187.

evidence and testimony regarding cases relating to Gilliam[76] is **DEFERRED.**

New Orleans, Louisiana, this 15th day of July, 2008.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[76] R. Doc. No. 229.