**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**TATIANA OSTROWIECKI,** *et al.*                    **CIVIL ACTION**

**VERSUS**                                           **No. 07-6598**

**AGGRESSOR FLEET, LTD.,** *et al.*                  **SECTION:  I/5**

**c/w**

**SONDRA RUBIN,** *et al.*                           **CIVIL ACTION**

**VERSUS**                                           **No. 07-6931**

**AGGRESSOR FLEET, LTD.,** *et al.*          ******This order applies only**
                                             **to Civil Action No. 07-6598.**


**ORDER AND REASONS**

        Before the Court are two motions *in limine* to exclude expert testimony.  First, is the

Ostrowiecki plaintiffs' motion to exclude the testimony and report of defendants' economist,

Kenneth J. Boudreaux ("Boudreaux").[1]  Second, is the motion to exclude the testimony and

reports of the Ostrowiecki plaintiffs' economist, Holly Sharp ("Sharp"), filed on behalf of

defendants, Travelers Indemnity Company of America ("Travelers"), Shipowners' Mutual

Protection and Indemnity Association (Luxembourg) ("Shipowners"), Aggressor Fleet

Franchising, Inc. ("AFFI"), Aggressor Fleet, Ltd. ("AFL"), Wayne Hasson ("Hasson"), and

_____

        [1] R. Doc. No. 184.

1

Randal Wright ("Wright").[2]

For the following reasons, the Ostrowiecki plaintiffs' motion to exclude the expert testimony of Boudreaux[3] is **DENIED** and defendants' motion to exclude the expert testimony of Sharp[4] is **DENIED**.

## BACKGROUND

Israel Ostrowiecki ("Ostrowiecki"), Bruce Rubin ("Rubin"), and Rubin's daughter, Lilith Rubin ("Lilith"),[5] were three of nineteen passengers on a ten-day cruise and recreational scuba diving expedition aboard the D/V OKEANOS AGGRESSOR ("OKEANOS").[6]  Ostrowiecki, Rubin, and Lilith boarded the OKEANOS on May 12, 2003, at Puntarenas, Costa Rica, where the diving trip originated.[7]  Before traveling aboard a smaller vessel, or skiff, to the specific dive

---

[2] R. Doc. No. 186.

[3] R. Doc. No. 184.

[4] R. Doc. No. 186.

[5] Ostrowiecki was a resident of Brazil, Rubin was a resident of New Mexico, and Lilith is allegedly a resident of both New Mexico and Louisiana.  R. Doc. No. 1-7, notice of removal, Ostrowiecki pet. ¶ 1; R. Doc. No. 127-20, mem. in opp. to Defendants' mot. to dismiss, Rubin second am. pet. ¶ 2; R. Doc. No. 49-2, mot. summ. j., pp 1-2.

[6] Ostrowiecki pet. ¶¶ 12, 15; Rubin second am. pet. ¶¶ 2, 13.  The OKEANOS is owned and operated by Aventuras Maritimas Okeanos, S.A. ("AMO"), which is a Costa Rican corporation with its principal place of business and headquarters in San Jose, Costa Rica.  R. Doc. No. 74-3, AMO mot. to dismiss, ex. A, Randall Martinez Chinchilla aff. ¶¶ 3, 9; R. Doc. No. 74-2, AMO mot. dismiss, p. 2.  At the time of this cruise, AMO was a franchisee of AFFI, the franchisor for the Aggressor fleet; AFFI is a Louisiana corporation.  Chinchilla aff. ¶ 11; Ostrowiecki pet. ¶ 5.  AFFI assists in marketing cruises onboard the OKEANOS for diving off the coast of Costa Rica; AFFI also promulgates and enforces standards for the operation of OKEANOS cruises off the Costa Rican coast.  Chinchilla aff. ¶ 11.  AFL, also a Louisiana corporation, is the booking agent for scuba diving trips aboard vessels operating as Aggressor fleet franchisees, including the OKEANOS.  Ostrowiecki pet. ¶ 4.

[7] Ostrowiecki pet. ¶¶ 13, 14; Rubin second am. pet. ¶¶ 14, 17.

site, the divers would prepare aboard the OKEANOS for the daily dives.[8]

On May 16, 2003, Ostrowiecki, Rubin, and Lilith prepared for the second dive of the day and traveled from the OKEANOS to a dive site near the Cocos Islands, approximately three hundred miles off the coast of Costa Rica.[9]  Ostrowiecki, Rubin, and Lilith were three of nine divers on this particular dive.[10]  The dive was supervised by Wright, an employee of the vessel owner, Aventuras Maritimas Okeanos, S.A. ("AMO"); Wright was employed as a dive master aboard the OKEANOS.[11]

Several of the other divers allegedly aborted the dive early because of turbulent diving conditions.[12]  Fifty minutes after the dive began, seven of the nine divers, including Lilith, were back on the skiff.[13]  The skiff searched for forty-five minutes for the remaining divers, Ostrowiecki and Rubin, but to no avail.[14]  On May 17, 2003, around 2:00 a.m., the OKEANOS discontinued its search for Rubin and Ostrowiecki.[15]  Ostrowiecki and Rubin disappeared at sea

---

[8] Ostrowiecki pet. ¶ 14; Rubin second am. pet. ¶ 17.

[9] Ostrowiecki pet. ¶¶ 11, 15; Rubin second am. pet. ¶¶ 12, 19; R. Doc. No. 120-4, opp'n, ex. C, David Inman dep. at 99.

[10] Ostrowiecki pet. ¶ 15; Rubin second am. pet. ¶ 19.

[11] R. Doc. No. 1-7, notice of removal, Ostrowiecki second am. pet. ¶ 10.

[12] Ostrowiecki pet. ¶¶ 18-19; Rubin second am. pet. ¶ 22.

[13] Ostrowiecki pet. ¶ 20; Rubin second am. pet. ¶ 23.  Lilith's dive lasted approximately thirty-five minutes. Ex. A, Lilith dep. at 67; R. Doc. No. 71-7, mot. dismiss Sondra's clms., ex. C, May 16, 2003, dive log.

[14] Ostrowiecki pet. ¶¶ 20-23; Rubin second am. pet. ¶¶ 26.

[15] Ex. A, Lilith dep. at 86; R. Doc. No. 71-16, mot. dismiss Sondra's clms., ex. L, Hasson dep. at 226-27; R. Doc. No. 120-6, opp'n, ex. K, Wright dep. at 115-16; R. Doc. No. 71-18, mot. dismiss Sondra's clms., ex. N, Jorge Berrocal dep. at 193.

during this dive.[16]

On November 5, 2003, the Ostrowiecki plaintiffs, Tatiana Ostrowiecki ("Tatiana"), Alexandre Ostrowiecki ("Alexandre"), and Susan Sverner on behalf of minor child, Julia Helena Ostrowiecki ("Julia"), filed their petition in Orleans Parish Civil District Court against AFL, AFFI, Aggressors International, Ltd. ("AIL"),[17] AMO, Hasson,[18] Randall Martinez Chinchilla ("Chinchilla"),[19] and XYZ Insurer.[20]  Two days later, the Rubin plaintiffs also filed their petition in Orleans Parish Civil District Court against the same seven defendants.[21]

The Ostrowiecki and Rubin plaintiffs seek damages for defendants' negligence, breach of contract, and misrepresentations.[22]  The Rubin plaintiffs also allege intentional and negligent infliction of emotional distress and seek bystander damages pursuant to La. Civ. Code Ann. article 2315.6 (1997).[23]  The plaintiffs amended their joint petition on July 23, 2007, adding an

---

[16] Ostrowiecki pet. ¶¶ 11, 27; Rubin second am. pet. ¶¶ 12, 31.

[17] AIL allegedly assists in marketing for Aggressor Fleet franchisees, including the OKEANOS. Ostrowiecki pet. ¶ 6.  AIL was dismissed as a defendant from the lawsuit when the Louisiana Fourth Circuit Court of Appeals granted AIL's writ application with respect to personal jurisdiction.  R. Doc. No. 24-2, mem. supp. of joint mot. to remand at 7 n.4.

[18] Hasson is allegedly an owner of AIL and the Aggressor Fleet franchise "Operations Manager Captain" for all of the Aggressor fleet vessels, including the OKEANOS.  Ostrowiecki pet. ¶ 8.  Hasson is allegedly a resident of Florida and/or the Cayman Islands.  *Id.*

[19] Chinchilla is the president and a shareholder of AMO and a Costa Rican citizen.  Ostrowiecki pet. ¶ 9; Chinchilla aff. ¶ 2.  On May 30, 2008, the Court granted Chinchilla's motion to dismiss for lack of personal jurisdiction and dismissed all plaintiffs' claims against him.  R. Doc. No. 239.

[20] *Id.*

[21] R. Doc. No. 1, notice of removal, ¶ 1.

[22] Ostrowiecki pet. ¶¶ 34-51; Rubin second am. pet. ¶¶ 39-61.

[23] Rubin second am. pet. ¶¶ 54-57.  On December 4, 2003, defendants removed the cases to this Court, claiming that DOHSA provided the exclusive remedy for any person claiming damages as the result of death occurring on the high seas.  *Rubin v. Aggressor Fleet Ltd.*, Civil Action No. 03-3408, R. Doc. No. 1, notice of

alternative claim pursuant to the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 30301-30308 (2006).[24]

## *LAW AND ANALYSIS*

### I.      **Standard of Law**

Rule 702 of the *Federal Rules of Evidence* governs the admissibility of expert witness testimony.  Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469, 480 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for

---

removal ¶ 5 (E.D. La. Dec. 4, 2003); *Ostrowiecki v. Aggressor Fleet Ltd.*, Civil Action No. 03-3409, R. Doc. No. 1, notice of removal ¶ 5 (E.D. La. Dec. 4, 2003).  The Ostrowiecki and Rubin plaintiffs filed a joint motion to remand, which the Court granted.

On May 6, 2004, the Ostrowiecki plaintiffs amended their petition to add Wright as a defendant; on May 10, 2004, the Rubin plaintiffs added Wright as a defendant. Ostrowiecki second am. pet. ¶ 9; R. Doc. No. 18-3, Rubin first am. pet., ¶ 10.  On June 17, 2004, the two lawsuits were consolidated by the Orleans Parish Civil District Court. R. Doc. No. 18-2, mem. in supp. of joint mot. to remand, p. 6.

On April 7, 2006, plaintiffs amended their joint petition to add three insurers, Certain Underwriters at Lloyds, London ("Lloyds"), Travelers, and Shipowners.  Rec. Doc. No. 18-4, joint fourth am. pet., ¶ 9.2--9.4. Lloyds provided underwater liability insurance to defendants Wright, AFL, AFFI, Hasson, and AMO.  Travelers provided general commercial liability insurance to defendants AFL and Hasson.  Shipowners is a mutual marine protection and indemnity (P&I) association organized under the laws of Luxembourg with its managing agent in London, England.  R. Doc. No. 49-7, Shipowners mot., ex. E, Simon Swallow aff. ¶ 6.  On May 20, 2008, this Court granted Shipowners' motion for summary judgment and dismissed all of plaintiffs' claims against it.  R. Doc. No. 232.

On October 9, 2007, Shipowners removed.  R. Doc. No. 1, notice of removal.  On December 12, 2007, this Court denied the plaintiffs' motion to remand.  R. Doc. No. 44.

[24] Notice of removal, ex. C, joint fifth am. pet.

determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002).  Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238, 249-50 (1999).  The burden is on the proponent to prove by a preponderance of the evidence that the expert satisfies the Rule 702 test. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584.  The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining '*how* to test an expert's reliability.'" (*citing Kumho Tire*, 526 U.S. at 152, 119 S. Ct. at 1176, 143 L. Ed. 2d at 253)).  "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702

and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (*quoting* Fed. R. Evid. 702 advisory committee's note).

## II.    Analysis

### A.    *Defendants' Economist Kenneth J. Boudreaux*

Boudreaux is a consulting economist retained by defendants to provide a calculation of the Ostrowiecki plaintiffs' loss due to the death of their father.[25] The Ostrowiecki plaintiffs argue that Boudreaux's testimony should be excluded because:  (1) Boudreaux did not perform a loss of inheritance calculation, (2) Boudreaux's loss of support determination is unreliable, and (3) Boudreaux failed to incorporate the pecuniary loss relating to the sale of fifty percent of Ostrowiecki's company, Fax Point.[26]

With respect to the Ostrowiecki plaintiffs' first argument, they argue that Boudreaux's

---

[25] R. Doc. No. 197, mem. opp'n, ex. A, Boudreaux report at 1.

[26] R. Doc. No. 184-2, mem. supp. at  2.

failure to perform a loss of inheritance calculation resulted from a lack of available information reviewed by or given to Boudreaux or from defendants' instructions to calculate only loss of support.[27]  However, Boudreaux's reasoning for not calculating loss of inheritance is due to the speculative nature of such calculation given Ostrowiecki's lack of a will and unclear income information, as well as the difficulty in discerning what proportion of corporate earnings were, and would continue to have been, consumed by Ostrowiecki himself.[28]  Boudreaux has explained his methodology, and the Ostrowiecki plaintiffs do not show the Court that his reasoning is unsound.  This argument, therefore, goes to the weight of the evidence and not to its admissibility.  The *Daubert* framework is utilized to ensure that "expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does *not* judge the expert conclusions themselves."  *Guy*, 394 F.3d at 325.

Second, the Ostrowiecki plaintiffs contend that Boudreaux's loss of support calculations should not be admitted because they are based upon incorrect assumptions and such calculations are unreliable.[29]  In connection with this argument, they argue that Boudreaux's calculations assume that Julia resided with Ostrowiecki full time, when in fact she lived with Ostrowiecki only part-time.[30]  Defendants concede this point, and argue that the miscalculation, in fact, results in a higher loss of support figure.[31]  However, in his deposition, Boudreaux further admits that he

---

[27] R. Doc. No. 184-2, mem. supp. at  5.

[28] R. Doc. No. 197,  mem. opp'n. at 4.

[29] Mem. supp. at 8-9.

[30] *Id.* at 9.

[31] Mem. opp'n. at 5.

was not aware of the monthly child support payments made by Ostrowiecki and that this income would be relevant to the loss of support calculations.[32]  Accordingly, the accuracy of Boudreaux's calculations may be at issue due to the missing child support income.  These discrepancies, if any, may be highlighted through vigorous cross-examination and go to weight of Boudreaux's testimony.  *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (*quoting Daubert*, 509 U.S. at 596, 113 S. Ct. at 2789, 125 L. Ed. 2d at 484) ("'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'").

The Ostrowiecki plaintiffs also argue that Boudreaux erroneously assumes that the value of the annual compensation and benefits Ostrowiecki and his family derived from his company totaled $13,644, despite evidence presented by the Ostrowiecki plaintiffs that Ostrowiecki was subsidized by Fax Point.[33]  Defendants maintain that the sum was derived from Ostrowiecki's income tax returns, which economists typically view as the most reliable and valid type of documentation of income.[34]  Again, Boudreaux's determination as to which documents to rely upon, while excluding others, goes to the credence to be given to his testimony; an expert's refusal to rely upon unsubstantiated testimony or corporate income and spending patterns does not render his opinion unreliable or unsound.  It is "the role of the adversarial system, not the

---

[32] R. Doc. No. 199-3, Boudreaux dep. at 33.

[33] Mem. supp. at 9.  "The company money was used to buy a car when he needed, to pay the phone bill, for trips, and all kinds of stuff like this.  So the money–the income statement is just about the tip of the iceberg."  R. Doc. No. 184-4, ex. D, Alexandre dep. at 95.

[34] Mem. supp. at 9.  "Statements . . . [are] not documentation . . . I'm unwilling as an economist to adopt testimony of that type as being the sort that would support professional opinion of income, particularly if it's contradicted by tax returns."  Boudreaux dep. at 32.

court, to highlight weak evidence." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004); *see United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").

With respect to their second argument, the Ostrowiecki plaintiffs also state that Boudreaux's opinion is unreliable because, in calculating the pecuniary losses resulting from Ostrowiecki's death, Boudreaux did not have, nor did he request, access to a large portion of the documents analyzed by the Ostrowiecki plaintiffs' expert witness, Sharp.[35]  They contend that, without having reviewed or analyzed all relevant documents and information, Boudreaux's opinion is incomplete and renders Boudreaux unable to assist the jurors in understanding Sharp's calculations.[36]  As mentioned above, the argument goes to the weight of Boudreaux's testimony and can be exposed during cross-examination.

Finally, the Ostrowiecki plaintiffs argue that Boudreaux's opinion does not address the pecuniary loss resulting from the sale of fifty percent of Ostrowiecki's company following his death; the Ostrowiecki plaintiffs claim that this part of Boudreaux's opinion was based on his belief that there were no documents to support the claim.[37]  The Ostrowiecki plaintiffs mischaracterize the absence of the fourteen percent loss incurred in the sale of the company as

---

[35] Mem. supp. at 5-6.

[36] *Id.* at 6-8.

[37]  Mem. supp. at 12-13; Boudreaux report at 3.

ignorance; in fact, Boudreaux's report addresses and dismisses this issue as irrelevant.[38]  The Ostrowiecki plaintiffs attempt to frame Boudreaux's report as "admittedly erroneous" and "*per se* unreliable" when in actuality it merely expresses a different opinion, supported by an alternative economic model.[39]  The Ostrowiecki plaintiffs seek to have the Court determine the weight to be given to Boudreaux's testimony, not its admissibility, which the Court will not do.

B.    *Plaintiffs' Economist Holly Sharp*

On September 10, 2007, Sharp prepared an expert report regarding the economic loss to the Ostrowiecki plaintiffs due to the death of Ostrowiecki.[40]  Sharp calculated four components of economic loss:  (1) Julia's loss of support for child support, tuition, and personal consumption; (2) lost financial resources for one-time expenses for Ostrowiecki's children; (3) loss to the Ostrowiecki plaintiffs from the sale of fifty percent of Ostrowiecki's business; and (4) lost inheritance to the Ostrowiecki plaintiffs due to the loss of income from fifty percent of Ostrowiecki's company.[41]

Defendants argue that, because Sharp is not qualified as an expert in Brazilian economic issues, she is not qualified to give expert testimony as to the economic losses arising from

---

[38] Boudreaux rep. at 3.  Boudreaux found that there was no reasonable basis to include the company losses in the claim of loss of support because Ostrowiecki would have consumed the corporate amounts during his life expectancy.  *Id.*

[39] Mem. supp. at 13.

[40] R. Doc. No. 186-3, mem. supp., ex. A, Sharp expert report.

[41] *Id.* at 6-7.

Ostrowiecki's death.[42]  Although Sharp conceded that she is not an expert in Brazilian economics or tax practices, Sharp relied upon documents presented to her and discussions with Alexandre. The strength of Sharp's credentials goes to the weight of her testimony and not its admissibility. *See Williams v. Warren*, 253 F.3d 700 (5th Cir. 2001) (holding that an expert was qualified to discuss broken bones even though he was not an orthopedic surgeon and that the strength of his "credentials go to the weight, not the admissibility" of his testimony).

Next, defendants contend that Sharp's opinion is not based upon sound methodology and will not assist the trier of fact.  In support of this argument, defendants state that:  (1) Sharp largely based her opinion on conversations with Alexandre,[43] (2) Sharp did not understand the contents of Brazilian financial documents, and (3) Sharp based her opinion on Ostrowiecki's spending, rather that tax return income.[44]  Questions as to the sufficiency of the basis for Sharp's opinions go to the credibility to be given to her opinions.  *See Primrose*, 382 F.3d at 563; *14.38 Acres*, 80 F.3d at 1077.  The Court will not exclude weak, but admissible, evidence.[45]

Accordingly,

---

[42] R. Doc. No. 186-2, mem. supp. at 2.

[43] This argument is repeated several times, *i.e.*, defendants argue that several of Sharp's opinions are baseless because they are supported only by conversations with Alexandre and nothing more.  Specifically, defendants argue that the following determinations are supported by this unsound methodology:  (1) Ostrowiecki's income, (2) wedding expenses and how much Ostrowiecki would have contributed, (3) apartment cost and how much Ostrowiecki would have paid, (4) car type and expense and the portion Ostrowiecki would have covered, (5) Julia's child support payments, and (6) the value of Ostrowiecki's business.  The Court points out that several of the above opinions are not based merely on conversations with Alexandre, as defendants would lead the Court to believe, but also on receipts, credit card statements, fees, memberships, and bills.

[44] Mem. supp. at 9-19.

[45] The Court further notes that defendants' reliance on *In re Air Crash Disaster at New Orleans, Louisiana*, 795 F.2d 1230 (5th Cir. 1986), is misplaced.  In that case, the bases for the economist's opinions were in direct contravention of facts in the record.  Here, defendants have not shown that Sharp's opinions are inconsistent with other *facts*, merely that her conclusion is different from that of their own economist, Boudreaux.

   **IT IS ORDERED** that the Ostrowiecki plaintiffs' motion *in limine* to exclude Boudreaux's expert testimony and report[46] is **DENIED.**

   **IT IS FURTHER ORDERED** that the defendants' motion *in limine* to exclude the expert reports and testimony of Sharp is **DENIED**.

   New Orleans, Louisiana, August 5, 2008.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[46] R. Doc. No. 184.