UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TATIANA OSTROWIECKI,** *et al.* | **CIVIL ACTION** |
| **VERSUS** | **No. 07-6598** |
| **AGGRESSOR FLEET, LTD.,** *et al.* | **SECTION: I/5** |
| **c/w** | |
| **SONDRA RUBIN,** *et al.* | **CIVIL ACTION** |
| **VERSUS** | **No. 07-6931** |
| **AGGRESSOR FLEET, LTD.,** *et al.* | ****This order applies to both cases.** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment,[1] filed on behalf of defendant, Travelers Indemnity Company of America ("Travelers"), on February 11, 2008. Travelers seeks summary judgment on plaintiffs' claims against Travelers based on the commercial general liability policy it allegedly issued to defendant Aggressor Fleet, Ltd. ("AFL") and its employees. For the following reasons, Travelers's motion is **DENIED**.

## *BACKGROUND*

The facts in this case are familiar to the parties and have been extensively documented in prior orders issued by this Court. For purposes of deciding this motion, the relevant, undisputed facts follow. Travelers issued an insurance policy to named insured AFL, which was in effect

---

[1] R. Doc. No. 73.

from November 17, 2002 to November 17, 2003.[2] The policy provided three types of insurance to AFL: businessowners coverage, commercial general liability coverage, and commercial inland marine coverage.[3] Pertinent to this motion is the commercial general liability coverage (the "CGL Policy"). At the top of the "Common Policy Declarations" page is a line stating "Business: Travel Agency," in apparent reference to AFL's status as a travel agency. Additionally, the CGL Policy designated as an insured AFL's employees, "but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business."[4]

Pursuant to the CGL Policy, Travelers agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies"[5] and to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies."[6] Insurance for the covered injuries applies when an "occurrence" took place in the

---

[2] R. Doc. No. 73-8, def.'s stmt. facts, at ¶4.

[3] *See* R. Doc. Nos. 73-5, 73-6, 73-7, ex. C.

[4] *Id.* at 6.

[5] *Id.* at 2.

[6] *Id.* at 5.

"coverage territory" and during the policy period.[7]  The CGL Policy also contained endorsements which modified the insurance provided.  One such endorsement was entitled "Exclusion — Travel Agency Errors and Omissions," (the "Exclusion")  which provided as follows:

> This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of:
> 1. The leasing, chartering, renting, arranging, recommending, use or operation of any means of transportation by or for others as part of any travel tour, chartered trip or travel plan in your business as a travel agent; or
> 2. Any breach of duty or negligent act, error or omission by you or by any other person or organization for whose acts you are legally liable in the conduct of your business as a travel agent.

Travelers argues that all of the alleged acts committed by co-defendants AFL and/or Wayne Hasson ("Hasson"), one of AFL's employees, fall within the scope of the Exclusion.[8]  Therefore, according to Travelers, the CGL Policy does not afford any coverage for the alleged acts of AFL and Hasson.  Plaintiffs' position is that the acts committed by AFL and Hasson were not in AFL's "business as a travel agent," and that the Exclusion does not preclude insurance coverage.

---

[7] *Id.* at 2, 5.

[8] In its motions, Travelers also contends that the acts of Randal Wright, another AFL employee, fall within the Exclusion.  R. Doc. No. 73-2, mem. supp., at 6.  Randal Wright has been dismissed from this lawsuit and plaintiffs do not expressly pursue any of his acts as potential bases of liability for Travelers.

*LAW AND ANALYSIS*

**I.      Standard of Law**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986).  The party responding to the motion for summary judgment may not rest

upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

## II.    Applicable Law

The parties submit, and the Court agrees, that Louisiana law governs the interpretation of the CGL Policy.[9] In Louisiana, "[a]ny ambiguity in an insurance policy is construed against the insurer." *La. Maintenance Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250, 1252 (La. 1993). Summary judgment finding a lack of coverage "may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." *Elliott v. Cont'l Cas. Co.*, 949 So. 2d 1247, 1253 (La. 2007) (quoting *Reynolds v. Select Props.*, 634 So. 2d 1180, 1182 (La. 1994)). "The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied." *Id.* "The insurer has the burden of proving that a loss comes within a policy exclusion." *La. Maintenance Servs.*, 616 So. 2d at 1252; *see also Cochran v. B.J. Servs. Co. USA*, 302 F.3d 499, 503 (5th Cir. 2002) (placing a "heavy burden" under Louisiana law on an insurer seeking to apply a professional

---

[9] R. Doc. No. 126, mem. opp'n, at 11 n.47.

services exclusion to deny coverage). "However, the rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists." *Id.* at 502.

The question for the Court is whether there is any reasonable interpretation of the Exclusion under which the alleged acts of AFL and Hasson fall outside of its scope. In its reply memorandum, Travelers attempts to raise additional arguments for the first time.[10] The Court declines to consider these contentions and limits its inquiry to Travelers's initial argument regarding the meaning of the Exclusion. *See Mitsui & Co., Ltd. v. M/V Hermann Schulte*, No. 95-3270, 1996 WL 365660, at *3 ("A reply memorandum is not adequate to raise entirely new arguments for dismissal.").

## III.  Scope of the Exclusion

As an initial matter, the fact that the Common Policy Declarations page designates AFL as a travel agency does not mean that every act committed by AFL is in its business as a travel agent. The Fifth Circuit, construing a professional services exclusion under Louisiana law, stated that "the title or trade of the insured contractor or its employees, or the contractor's overall

---

[10] In its reply, Travelers first argues as follows:

> If AFL's allegedly wrongful acts were the business of a travel agency, then they are excluded from the Travelers' CGL policy's coverage by the travel agency errors and omissions and exclusion (sic). If AFL's allegedly wrongful acts were not the business of a travel agency, then there is no coverage because the Travelers policy never comes into play in the first place.

R. Doc. No. 134, reply mem. supp., at 4. Under this reasoning, the so-called "insurance" provided by the CGL Policy would be an absolute nullity. Second, Travelers contends that the "Watercraft exclusion" also operates to preclude coverage for AFL's alleged acts. R. Doc. No. 134, reply mem. supp., at 3. Without addressing the merits of this defense, the Court sees no reason why Travelers could not have properly raised this issue in its initial memorandum; it will, therefore, be disregarded.

job description, is not the determinative factor in this inquiry." *Cochran*, 302 F.3d at 506. "Rather it is the nature of the particular service allegedly negligently performed (or not performed)" that determines whether an exclusion applies to particular conduct. *Id.* In order to meet its burden, Travelers must, therefore, demonstrate that all of AFL's acts were undertaken "in [AFL's] business as a travel agent." If any of the alleged acts were not committed in AFL's business as a travel agent, granting summary judgment for Travelers is inappropriate.

Travelers first contends that plaintiffs' injuries arose out of the arranging and recommending of the diving trip by AFL and such injuries are, therefore, excluded from coverage.[11] Specifically, Travelers points out that both the Rubin and Ostrowiecki plaintiffs have alleged that the decedents and Lilith Rubin relied on misrepresentations about the safety practices of the "Aggressor Fleet enterprise."[12] In supplemental briefing ordered by the Court, plaintiffs contend that, in order to exclude coverage, any alleged "arranging" or "recommending" must refer not to the overall dive trip, but to "any means of transportation by or for others *as part of*" the dive trip.[13] Travelers, in its own supplemental memorandum, straddles these two positions. Initially, it argues, "Travelers avers that [the] alleged conduct all clearly constitutes the "arranging" or "recommending" *of a chartered trip* in AFL's business as a travel agent."[14]

---

[11] R. Doc. No. 73-2, mem. supp., at 12. Defendant cites two cases in which the courts found the claim to fall within the coverage of an errors and omissions policy issued to the defendant. *See Auto Eur., L.L.C. v. Conn. Indem. Co.*, 2002 WL 475123 (D. Me. 2002); *Travel Turf, Inc. v. Am. Home Assur. Co.*, 1995 WL 214455 (E.D. Pa. 1995). These cases present the converse scenario to the present case; in the cases cited by defendant, the subject policy was an errors and omissions policy, whereas in this case, a general liability policy contains a specific exclusion. Setting aside the fact that the policy language has not been shown to be identical to that in this case (nor could it be, given the differing purposes of the policies), these cases are unhelpful to defendants' position.

[12] R. Doc. No. 73-3, ex. A, at ¶¶ 47, 52; R. Doc. No. 73-4, ex. B, at ¶¶ 43, 48.

[13] R. Doc. No. 272, supplemental mem. opp'n, at 2 (emphasis added).

[14] R. Doc. No. 273, supplemental mem. supp., at 2 (emphasis added).

Later in its brief, however, Travelers narrows its position: "Travelers submits that AFL's act of promoting the dive trip on the website necessarily involves "recommending" *"any means of transportation" (the* D/V Okeanos Aggressor*) by or for others* as part of a chartered trip in AFL's business as a travel agent."[15]

Next, Travelers argues that other specific acts allegedly committed by AFL fall within the scope of the Exclusion.[16] Plaintiffs identify several alleged acts by AFL or Hasson that they argue are not within the scope of the Exclusion: 1) drafting the "Confidential Operating Manual" for the Okeanos Aggressor ("Okeanos") and ensuring compliance with that manual; 2) directing the operation of the Okeanos; 3) training the Okeanos's captains, dive masters, and crew members; 4) recommending the hiring of Randal Wright as a dive master; 5) continuing the diving trip after Bruce Rubin and Israel Ostrowiecki had disappeared, thereby confining Lilith Rubin to the Okeanos; and 6) publicly blaming Lilith Rubin for her father's death.[17] Travelers contends that all of the above acts by AFL fall within the first section of the Exclusion. Specifically, Travelers argues that the allegations arise out of the "use or operation of the *D/V Okeanos Aggressor* during the dive trip booked through AFL."[18] Standing alone, this statement is accurate. However, the Exclusion limits its effect to uses or operations "by or for others as part of any travel tour, chartered trip or travel plan in [AFL's] business as a travel agent."[19]

The parties' struggles to divine a conclusive meaning of the Exclusion is understandable.

---

[15] *Id.* at 3 (emphasis added).

[16] R. Doc. No. 73-2, mem. supp., at 13-19.

[17] R. Doc. No. 126, mem. opp'n, at 2-3.

[18] R. Doc. No. 73-2, mem. supp., at 13.

[19] R. Doc. No. 73-6, ex. C, at 18.

The Court finds that the language of the Exclusion is, at best, ambiguous.

First, it is unclear how the use of a vessel (a means of transportation) by or for others can also be an act undertaken in AFL's business as a travel agent. For instance, if a vessel is used *by* a third party operator, it is difficult to conceptualize how it could also be used *by* AFL in its business as a travel agent. Meanwhile, if a vessel is used *for* others as part of a chartered trip, it is presumably being piloted or operated to transport travelers from one place to another. Such a use would not fall under any reasonable conception of the business of a travel agent.

Meanwhile, the provision's substitution of the noun form ("use", "operation") for the gerund form ("leasing", "chartering", "renting", "arranging", "recommending") of the contemplated activities shifts the identity of the actor from the travel agent to otherwise unidentified third parties without removing the language limiting the Exclusion's applicability to acts "in [AFL's] business as a travel agent." The provision cannot be read to simultaneously expand its application to acts by third parties while retaining its limited applicability to acts in the insured's travel agent business.

Finally, the Court points out that the ambiguity is not confined to the "use or operation" language. For instance, the provision purports to exclude coverage for the "recommending . . . of any means of transportation by . . . others as part of any . . . chartered trip . . . in your business as a travel agent." It is difficult to comprehend how such a recommendation could fall within the business of a travel agent when a travel agent was not even the party doing the recommending.

"Any ambiguity in an insurance policy is construed against the insurer." *La. Maintenance Servs*, 616 So. 2d at 1252. The Court concludes that the Exclusion is ambiguous on its face. In light of the heavy burden borne by insurers to show that an exclusion clearly

9

applies, the Court finds that Travelers has not met that burden, and must deny its motion.[20]

Accordingly,

**IT IS ORDERED** that the motion for summary judgment, filed on behalf of defendant, Travelers Indemnity Company of America, is **DENIED**.

New Orleans, Louisiana, August 7, 2008.

*[signature]*
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[20] Notwithstanding the provision's ambiguity, the Court agrees with plaintiffs that the alleged acts of AFL and/or Hasson enumerated in the opposition memorandum, R. Doc. No. 126, mem. opp'n, at 2-3, are not within the business of a travel agent.  The dictionary definitions offered by plaintiffs, *see* R. Doc. No. 272-1, ex. 1, are persuasive in illustrating the contours and limits of a travel agent's duties.  Under one such definition, a travel agency "makes travel arrangements for tourists or other travelers, as for transportation, hotels, and itineraries." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1523 (4th ed. 2004).  The Court finds that, notwithstanding its ambiguity, the Exclusion, applied to the alleged acts of AFL and/or Hasson, is susceptible to a "reasonable interpretation . . . under which coverage could be afforded."  *Elliott*, 949 So. 2d at 1253.