UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


**SONDRA RUBIN,** *et al.*                                                      **CIVIL ACTION**

**VERSUS**                                                                              **No. 07-6931**
                                                                                        **c/w No. 07-6598**

**AGGRESSOR FLEET, LTD.,** *et al.*                                             **SECTION I/5**


## ORDER AND REASONS

Before the Court is a motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50, with respect to Lilith Rubin's ("Lilith") emotional distress claim based on Wayne Hasson's alleged public blaming of Lilith for her father's disappearance. The motion is was filed on behalf of defendants, Aggressor Fleet, Ltd. ("AFL"), Aggressor Fleet Franchising, Inc. ("AFF"), Wayne Hasson ("Hasson"), Certain Underwriters at Lloyds, London, Subscribing to Policy No. 17026, and Travelers Indemnity Company of America (collectively, "defendants"). For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.


### *BACKGROUND*

The facts of this case are well documented in this Court's prior orders and are familiar to the Court and the parties following the two-week jury trial of this matter. Jury trial commenced on April 6, 2009. Plaintiffs rested their case on April 9, 2009, at which point defendants moved, pursuant to Rule 50, for judgment as a matter of law on both Sondra Rubin's and Lilith's

1

emotional distress claims. Ruling on the motion was deferred at that time.[1] Defendants renewed their motion at the close of all evidence on Thursday, April 16, 2009. The Court denied the motion and the case was submitted to the jury.[2]

On April 17, 2009, during jury deliberations, the foreperson communicated in writing to the Court that the jury was unable to reach a unanimous response to jury interrogatories relating to Lilith's emotional distress claims resulting from Hasson's alleged public blaming of her for her father's disappearance. Those emotional distress claims were, therefore, withdrawn from the jury's consideration.[3] The jury ultimately returned a verdict for defendants on all other claims, including the outstanding emotional distress claims of Lilith and Sondra Rubin. The jury was discharged on April 17, 2009.

Defendants timely renewed their Rule 50 motion on April 30, 2009. In their motion, defendants reurge the arguments made during trial, but focus solely on those claims which were withdrawn from the jury's consideration. These claims are based on alleged comments made by Hasson which were published in an article by David Boddiger ("Boddiger") in the Tico Times newspaper. The relevant excerpt from the May 23, 2003 of that newspaper reads as follows:

> Hasson insisted both [Bruce Rubin and Israel Ostrowiecki] were supposed to be diving with buddies.
> "Both of these guys were assigned buddies," he said.
> Rubin's dive buddy was his 19-year-old daughter Lilith, whom Hasson also blamed for her father's disappearance.
> "The last people on the boat were Bruce and Lily (Rubin). I've confirmed this," he said. According to Hasson, Lily entered

---

[1] R. Doc. No. 436.

[2] R. Doc. No. 447.

[3] Lilith agreed to withdraw, but not to dismiss, such claims. Further, defendants do not claim that a dismissal was requested.

2

the water and never waited for her father. "She never even looked back," he said. "She went down to join the others."[4]

*LAW AND ANALYSIS*

I. **STANDARD OF LAW**

Once a party has been fully heard on an issue during a jury trial, Rule 50 permits a district court to grant judgment as a matter of law on any claim dependent on that issue if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Rule 50(b) provides that if a motion for judgment as a matter of law "addresses a jury issue not decided by a verdict, no later than days after the jury was discharged . . . the movant may file a renewed motion for judgment as a matter of law." Fed. R. Civ. P. 50(b). "In ruling on the renewed motion, the court may . . . direct the entry of judgment as a matter of law." Id.

"A motion for judgment as a matter of law should be granted if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." SMI Owen Steel Co., Inc. v. Marsh USA, Inc., 520 F.3d 432, 437 (5th Cir. 2008) (quoting Pineda v. United Parcel Serv., Inc., 360 F.3d 483, 486 (5th Cir. 2004)). "A court should grant a motion for judgment as a matter of law only when 'the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.'" Id. (quoting Pineda, 360 F.3d at 486).

"In entertaining a Rule 50 motion for judgment as a matter of law the court must review all of the evidence in the record, draw all reasonable inferences in favor of the nonmoving party,

---
[4] Plaintiffs' tr. ex. 55b.

3

and may not make credibility determinations or weigh the evidence." <u>Ellis v. Weasler Engineering Inc.</u>, 258 F.3d 326, 337 (5th Cir. 2001). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Id.</u> (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150-51 (2000)). "Thus, the court must give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" <u>Id.</u> (quoting <u>Reeves</u>, 530 U.S. at 151).

## II. DISCUSSION

Although the Court previously denied said motion at the close of the evidence, it now revisits that ruling having the benefit of additional post-trial briefing on the subject. <u>See</u> 9B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2537 (2008) ("[T]he district court . . . will be deemed to have reserved decision even if it has denied the motion and not uttered a formal reservation.").

In <u>Nicholas v. Allstate Insurance Co.</u>, 765 So. 2d 1017, 1023 (La. 2000), the Supreme Court of Louisiana set forth the requisite elements of an intentional infliction of emotional distress ("IIED") claim : "(1) the conduct of the defendant must be extreme and outrageous; (2) that the emotional distress suffered must be severe; and (3) that the defendant desires to inflict emotional distress or knew that such distress was certain or substantially certain to result from the conduct." <u>Id.</u> at 1023.

The Louisiana Second Circuit Court of Appeal, citing <u>Nicholas</u>, recently elaborated on

the applicable standard for the first element:

> It is not enough that the defendant acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and leave him to exclaim, "Outrageous."

Fletcher v. Wendelta, Inc., 999 So. 2d 1223, 1230 (La. Ct. App. 2009). Furthermore, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991).

The Court finds that Lilith has not presented sufficient evidence for a reasonable jury to find that Hasson's conduct was "extreme and outrageous," as required by Louisiana law to sustain an IIED claim. First, Hasson's alleged statement to Boddiger, reporter for the Tico Times, did not needlessly or baselessly impugn Lilith's character. Instead, he gave a matter-of-fact description of his understanding of the events surrounding Lilith's and Bruce's entry into the water. That defendants persisted in their assertion of Lilith's negligence as a defense to full liability demonstrates that Hasson's statement to Boddiger was not frivolous or without any arguable basis in fact.

Second, although Hasson knew or should have known that Lilith was in a fragile

5

emotional condition – a factor to be considered by this Court, see id. at 1210 ("The defendant's knowledge that plaintiff is particularly susceptible to emotional distress is a factor to be considered.") – there was not sufficient evidence showing that his alleged comments were "utterly intolerable in a civilized community." Under the circumstances, Hasson's alleged blaming of Lilith was underscored by plausible reasons for doing so. In other words, there was evidence that Hasson was attempting to defend the conduct of AFL, AFF, AMO, and their employees by casting responsibility for the incident upon Lilith and her alleged failure to follow the "buddy system." Certainly, he might have waited several weeks or months until the immediacy of Bruce's death had grown more distant to make such statements. However, the Court notes that Boddiger asked Hasson for his comments. That is, Hasson's views were solicited by the newspaper, rather than Hasson taking the initiative to make his opinion known.

The Court find that it does not "go beyond all possible bounds of decency" for Hasson to respond, when pressed by a newspaper reporter, with his understanding of the events, even when articulating that understanding would foreseeably be hurtful to Lilith. Hasson's comment was arguably "inconsiderate and unkind." As stated in White, however, the law expects persons to be hardened to such acts and refuses to impose liability for insults and indignities.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that defendants' Rule 50 motion is **GRANTED** with respect to Lilith's claim for intentional infliction of emotional distress based on Hasson allegedly blaming her for her father's disappearance and such claim is **DISMISSED WITH PREJUDICE**.

6

Defendants' Rule 50 motion with respect to Lilith's claim for negligent infliction of emotional distress is **DENIED**.

New Orleans, Louisiana, May 21, 2009.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**